# Nos. 22-16615, 22-60037

# United States Court of Appeals for the Ninth Circuit

IN RE:

DAVID EDWARDS MYERS & MARY ANN MYERS,

*Debtors.*

LVNV FUNDING, LLC,

*Appellant*,

*v.*

DAVID EDWARDS MYERS & MARY ANN MYERS,

*Appellees.*

CASE NO. 22-16615, ON DIRECT APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA (CHAPTER 13 CASE NO. 21-11376, HON. NATALIE M. COX)

CASE NO. 22-60037, ON APPEAL FROM THE BANKRUPTCY APPELLATE PANEL FOR THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT (CASE NO. 22-1005)

## BRIEF OF APPELLANT LVNV FUNDING, LLC

ISLEY M. GOSTIN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
(202) 663-6000
isley.gostin@wilmerhale.com

EDDIE R. JIMENEZ
ALDRIDGE PITE, LLP
7220 South Cimarron Road
Suite 140
Las Vegas, NV 89113
(858) 750-7600

PHILIP D. ANKER
ALLYSON PIERCE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
250 Greenwich Street
New York, NY 10007
(212) 230-8800
philip.anker@wilmerhale.com

*Counsel for Appellant LVNV Funding, LLC*

# DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant LVNV Funding, LLC states:

1.     LVNV Funding, LLC is a non-governmental corporate party that is wholly owned by Sherman Originator, LLC.

2.     Sherman Originator, LLC is wholly owned by Resurgent Holdings, LLC.

3.     Resurgent Holdings, LLC is indirectly owned by private individuals.

4.     Accordingly, no publicly held investment fund or publicly held corporation directly or indirectly owns 10% or more of any class of LVNV Funding, LLC's equity interests.

January 27, 2023

/s/ Philip D. Anker
PHILIP D. ANKER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
250 Greenwich Street
New York, NY  10007
(212) 230-8800
philip.anker@wilmerhale.com

- i -

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ..................................................................i

TABLE OF AUTHORITIES ...................................................................iv

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION..........................................................5

ISSUES PRESENTED AND STANDARD OF REVIEW ........................9

RELEVANT STATUTORY AND LEGAL AUTHORITIES .................11

STATEMENT OF THE CASE...............................................................11

    A.    Claims-Allowance Proceedings In Bankruptcy ....................11

    B.    Proceedings Below ...............................................................15

        1.    LVNV's claim and the Bankruptcy Court's Allowance Order .............................................................................15

        2.    The BAP Decision and the BAP Appeal ...................17

        3.    The Bankruptcy Court's Disallowance Order and the Direct Appeal ...........................................................18

SUMMARY OF ARGUMENT ...............................................................19

ARGUMENT ........................................................................................21

I.    FEDERAL LAW, NOT STATE LAW, GOVERNS THE DOCUMENTATION A CREDITOR MUST PROVIDE IN SUPPORT OF A PROOF OF CLAIM FILED IN FEDERAL BANKRUPTCY COURT, AND LVNV PROVIDED THAT DOCUMENTATION ...................................................................21

    A.    Rule 3001 Is A Valid Federal Rule Of Procedure That Specifies The Documentation Necessary For An Allowable Proof Of Claim And Therefore Trumps The Nevada Statutes..........................23

        1.    The Nevada statutes conflict with the Bankruptcy Rules.........25

        2.    Bankruptcy Rule 3001 is valid under the Bankruptcy Rules Enabling Act ...............................................................36

    B.    The Nevada Statutes Are Not "Applicable Law," And Failure To Comply With The Nevada Statutes Does Not Render A Claim "Unenforceable" Under § 502(b)(1)..........................................41

1. State procedural and evidentiary rules are not "applicable law" that can render a claim "unenforceable" under § 502(b)(1) ................................................................................42

2. The Nevada statutes are not "applicable law" by their own terms.................................................................................47

II. IN ANY EVENT, LVNV PROVIDED ALL THE EVIDENCE THAT WOULD HAVE BEEN REQUIRED UNDER NEVADA LAW TO SUPPORT ITS CLAIM IN STATE COURT ...........................................................50

CONCLUSION ........................................................................................54

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015) .......................................................7

*Burlington Northern Railroad Co. v. Woods*, 480 U.S. 1 (1987) ...........................24

*City of Chicago v. Fulton*, 141 S. Ct. 585 (2021) ....................................................11

*Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017) .........................................11

*Ellis v. Salt River Project Agricultural Improvement & Power District*, 24 F.4th 1262 (9th Cr. 2022) ............................................................34

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ..........................................2, 22

*Freteluco v. Smith's Food & Drug Centers, Inc.*, 336 F.R.D. 198 (D. Nev. 2020) ................................................................................................42

*Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575 (9th Cir. 2022) ..........................34

*Hanna v. Plumer*, 380 U.S. 460 (1965) ................................ 3, 22, 24, 25, 37, 38, 39

*Hunsaker v. United States*, 902 F.3d 963 (9th Cir. 2018) .......................................10

*In re Allegheny International, Inc.*, 954 F.2d 167 (3d Cir. 1992) ..........................30

*In re Barnes*, 2022 WL 4073309 (Bankr. D. Nev. Sept. 2, 2022) ..........................51

*In re Burkett*, 329 B.R. 820 (Bankr. S.D. Ohio 2005) .............................................27

*In re Campbell*, 336 B.R. 430 (B.A.P. 9th Cir. 2005) .....................................14, 31

*In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002) ....................................................24

*In re Chalakee*, 385 B.R. 771 (Bankr. N.D. Okla. 2008) ........................................46

*In re Chaussee*, 399 B.R. 225 (B.A.P. 9th Cir. 2008) .............................................49

*In re Cleveland*, 396 B.R. 83 (Bankr. N.D. Okla. 2008) ........................................48

*In re Crutchfield*, 492 B.R. 60 (Bankr. M.D. Ga. 2013)..................................*passim*

iv

*In re Davenport*, 544 B.R. 245 (Bankr. D.D.C. 2015) ............................................27

*In re Garner*, 246 B.R. 617 (B.A.P. 9th Cir. 2000) ..............................30, 31, 39, 40

*In re Gorman*, 495 B.R. 823 (Bankr. E.D. Tenn. 2013) ..........................................46

*In re Gugliuzza*, 852 F.3d 884 (9th Cir. 2017) .....................................................7, 8

*In re Habiballa*, 337 B.R. 911 (Bankr. E.D. Wis. 2006) ........................................31

*In re Holm*, 931 F.2d 620 (9th Cir. 1991) ........................................................14, 30

*In re Jenkins*, 456 B.R. 236 (Bankr. E.D.N.C. 2011) ............................................49

*In re Khan*, 846 F.3d 1058 (9th Cir. 2017) .............................................................10

*In re Landmark Fence Co.*, 801 F.3d 1099 (9th Cir. 2015) .......................................8

*In re Lane*, 959 F.3d 1226 (9th Cir. 2020) ...............................................................7

*In re Larry's Apartment, LLC*, 249 F.3d 832 (9th Cir. 2001) ...........................22, 41

*In re Lasky*, 364 B.R. 385 (Bankr. C.D. Cal. 2007) ...................................31, 44, 45

*In re Linton*, 2022 WL 17077498 (9th Cir. Nov. 18, 2022) .....................................9

*In re Longoria*, 400 B.R. 543 (Bankr. W.D. Tex. 2009) ........................................37

*In re McMillen*, 440 B.R. 907 (Bankr. N.D. Ga. 2010) ..........................................49

*In re Nussman*, 501 B.R. 297 (Bankr. E.D.N.C. 2013) ....................................47, 48

*In re PG&E Corp.*, 46 F.4th 1047 (9th Cir. 2022) .................................................10

*In re Plourde*, 418 B.R. 495 (B.A.P. 1st Cir. 2009) ..............................................27

*In re Premier Golf Properties, LP*, 564 B.R. 660 (Bankr. S.D. Cal. 2016) ...........................................................................................................31

*In re Rains*, 428 F.3d 893 (9th Cir. 2005)................................................................9

*In re Shank*, 315 B.R. 799 (Bankr. N.D. Ga. 2004)...............................................27

*In re Skerlak*, 2014 WL 1153972 (Bankr. M.D.N.C. Mar. 20, 2014) ....................48

*In re Sluggo's Chicago Style, Inc.*, 912 F.2d 1073 (9th Cir. 1990) .........................10

*In re Southern California Plastics, Inc*, 165 F.3d 1243 (9th Cir. 1999).................25

*In re Walston*, 606 F. App'x 543 (11th Cir. 2015) ...........................................*passim*

*In re Zimmerman*, 156 B.R. 192 (Bankr. W.D. Mich. 1993) ...........................37, 38

*Katchen v. Landy*, 382 U.S. 323 (1966)............................................................12, 26

*Landis v. Washington State Major League Baseball Stadium Public Facilities District*, 11 F.4th 1101 (9th Cir. 2021) .........................................10

*Lundell v. Anchor Construction Specialists, Inc.*, 223 F.3d 1035 (9th Cir. 2000) ................................................................................................14

*Martin v. Pierce County*, 34 F.4th 1125 (9th Cir. 2022) ...........................24, 33, 34

*Midland Funding, LLC v. Johnson*, 581 U.S. 224 (2017) ......................................49

*Raleigh v. Illinois Department of Revenue*, 530 U.S. 15 (2000) ............................15

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010)......................................................................................24

*State v. American Bankers Insurance Co.*, 802 P.2d 1276 (Nev. 1990).................51

*Travelers Casulty & Surety Company of America v. Pacific Gas & Elecric Co.*, 549 U.S. 443 (2007) ......................................................12, 14, 39

*United States v. Childs*, 5 F.3d 1328 (9th Cir. 1993)............................................36

*Vanston Bondholders Protective Commission v. Green*, 329 U.S. 156 (1946)................................................................................................12, 39

## DOCKETED CASES

*In re Russell*, No. 22-10083 (D. Me.) ...............................................................28, 32

*In re Walston*, No. 14-14593-BB (11th Cir.).........................................................43

## STATUTES AND RULES

11 U.S.C.
§§ 101 *et seq.* ........................................................2
§ 101 ....................................................................12
§ 362 ....................................................................11
§ 501 ..............................................................12, 13
§ 502 ..........................................................*passim*
§ 523 ....................................................................26
§ 542 ....................................................................26
§ 547 ....................................................................26
§ 727 ..............................................................11, 26
§ 1129 ..................................................................26
§ 1141 ............................................................11, 26
§ 1325 ..................................................................26
§ 1328 ............................................................11, 26

28 U.S.C.
§ 157 ......................................................................5
§ 158 ..........................................................6, 9, 19
§ 1334 ....................................................................5
§ 2075 ....................................................24, 37, 38

Cal. Code Civ. Proc. § 454 ................................44

N.C. Gen. Stat. § 58-70-150 ..............................48

Nev. Rev. Stat.
§ 47.020 ..............................................................52
§ 97A.150 ...........................................................53
§ 97A.160 ....................................................*passim*
§ 97A.165 ............................................18, 47, 50

Fed. R. Bankr. P.
Rule 3001 ..................................................*passim*
Rule 3002 ............................................................38
Rule 3007 ............................................................50
Rules 7001-7087 ................................................49
Rule 9014 ............................................................50
Rule 9017 ............................................................36

Fed. R. Civ. P.
    Rule 8 ................................................................................33, 35
    Rule 23 ..........................................................................................34

Bankr. C.D. Cal. L.R. 3007-1 .....................................................40

## LEGISLATIVE MATERIALS

H.R. Rep. No. 95-595 (1977).............................................................45

124 Cong. Rec. H11093 (daily ed. Sept. 28, 1978) .................................45

## OTHER AUTHORITIES

3 King, Lawrence P., *Collier on Bankruptcy* § 502.02 (15th ed. 1991) .................30

Nevada Judges of Limited Jurisdiction, *Limited Jurisdiction Bench Book* (rev. ed. 2019).........................................................52

U.S. Courts, *Bankruptcy filings Continue to Fall* (Oct. 31, 2022), https://tinyurl.com/4srp4n3c.........................................................26

**INTRODUCTION**

This appeal stems from the Chapter 13 bankruptcy case filed by Appellees David Edwards and Mary Ann Myers ("Debtors") in U.S. Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"). Appellant LVNV Funding, LLC ("LVNV") filed a proof of claim in the case for $7,905.88 in credit-card debt. The parties and courts below agreed that LVNV's proof of claim provided all the information required under the Federal Rules of Bankruptcy Procedure to establish the "prima facie … validity" of the claim. Fed. R. Bankr. P. 3001(f).

Accordingly, under settled law governing the allowance of creditor claims in federal bankruptcy proceedings, LVNV's claim had to be allowed unless Debtors could show that the claim was unenforceable under applicable state substantive law. Debtors never attempted to make such a showing. They did not dispute that they incurred the debt and owe it to LVNV. Nor did they argue that any substantive provision of state law, such as the statute of limitations, rendered the debt unenforceable. The claim thus should have been allowed, as the Bankruptcy Court initially correctly held.

But when Debtors appealed, the Bankruptcy Appellate Panel (the "BAP") vacated the Bankruptcy Court's order, wrongly holding that LVNV's proof of claim must be disallowed because LVNV purportedly had not followed procedural requirements applicable in an action to collect the debt in Nevada state court (the

1

"BAP Decision").  According to the BAP, LVNV did not submit all the documentation that would supposedly be required to demonstrate the validity of its claim in a collection action in Nevada court.  While the BAP recognized that LVNV had submitted the documentation required to establish the prima facie validity of its claim in federal bankruptcy court under the Bankruptcy Rules,[1] and that the Debtors did not dispute that they owed the debt to LVNV, the BAP nonetheless concluded that LVNV's claim was "unenforceable" under "applicable law" and must be disallowed under § 502(b)(1) of the Bankruptcy Code.[2]  The Bankruptcy Court subsequently entered an order disallowing LVNV's claim based on the BAP's holding.

That holding is wrong as a matter of law for two reasons.  *First*, it violates the fundamental principle that bankruptcy courts adjudicating state-law disputes such as claims-allowance proceedings—like federal courts sitting in diversity—apply state *substantive* law, but federal *procedural* law, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), as well as the related principle that where a valid

---

[1]     Unless otherwise indicated, all references to "Bankruptcy Rules" or "Rules" shall be to the Federal Rules of Bankruptcy Procedure.

[2]     Unless otherwise indicated, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

federal rule of procedure governs an issue in federal court, that rule trumps any

contrary state rule under *Hanna v. Plumer*, 380 U.S. 460 (1965).

The Bankruptcy Code and Rules establish a special set of procedures for

claims-allowance in federal bankruptcy proceedings that differs significantly from

those applicable to a state-court lawsuit.  For one thing, the Code and Rules

establish a shifting burden of production for claims-allowance proceedings.  A

proof of claim is deemed allowed unless a party in interest objects.  11 U.S.C.

§ 502(a).  And even if a party in interest does object, a proof of claim that includes

the documentation specified in Bankruptcy Rule 3001 provides "prima facie

evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f).  The

objecting party must rebut that presumptive validity with evidence contravening

the substantive allegations in the proof of claim, or the claim will be allowed.

Here, LVNV provided all the information necessary to render its claim

prima facie valid—and thus allowable, since Debtors did not dispute their

liability—under Rule 3001.  But the BAP nevertheless held that LVNV's claim

was unenforceable because LVNV had supposedly failed to adhere to the different

evidentiary rules applicable in Nevada court.  That holding turns the rule of *Hanna*

on its head and erroneously allows a state procedural rule to trump a rule of federal

procedure promulgated in accordance with the Bankruptcy Rules Enabling Act.

Relatedly, the BAP erred, and violated basic *Erie* and bankruptcy principles, by concluding that the Nevada evidentiary rule is "applicable law" that can render LVNV's claim "unenforceable" under § 502(b)(1) of the Bankruptcy Code. As multiple courts have made clear, a claim is "unenforceable" under "applicable law" within the meaning of § 502(b)(1) only when state law renders the underlying debt unenforceable as a *substantive* matter—for instance, when the debtor never actually incurred the debt or when the statute of limitations has expired.

No such substantive state rule renders LVNV's claim unenforceable. Rather, the only issue is what documentation LVNV was required to submit with its proof of claim to render the claim allowable in bankruptcy court. That is a *procedural* question that is addressed by the Federal Rules of Bankruptcy Procedure. Nevada rules regarding the necessary documentation for a debt-collection action—which govern the procedures or evidentiary requirements in Nevada court, not whether the debt is valid in the first place—are not "applicable law" in bankruptcy, and a creditor's failure to comply with such procedural rules cannot render a claim filed in federal bankruptcy court "unenforceable" under "applicable law" pursuant to § 502(b)(1). Indeed, by their terms, the Nevada rules apply only to "actions" to "collect a debt," and a proof of claim filed in federal bankruptcy court is neither an "action" nor a proceeding to "collect a debt."

*Second*, even if the Nevada statutes on which the BAP relied were "applicable law" such that failure to comply with them could render LVNV's claim unenforceable, the BAP misconstrued those statutes. Because the Nevada statutes simply provide one way for a creditor to prove up its claim, without barring the creditor from using other evidentiary methods, LVNV's failure to submit all the documentation specified in the Nevada statutes would not render its claim unenforceable, even in a collection action in a Nevada courtroom.

This Court should reverse the judgments and remand to the Bankruptcy Court with instructions to allow LVNV's claim.

## STATEMENT OF JURISDICTION

The U.S. District Court for the District of Nevada had original jurisdiction pursuant to 28 U.S.C. § 1334 over Debtors' bankruptcy case, which was referred to the U.S. Bankruptcy Court for the District of Nevada pursuant to 28 U.S.C. § 157. The basis for this Court's jurisdiction over each of the captioned consolidated appeals is set out below.

**Appeal No. 22-60037.** On December 28, 2021, the Bankruptcy Court entered a final order allowing LVNV's claim. ER-107. Debtors timely appealed to the BAP, and on July 19, 2022, the BAP issued the BAP Decision, holding that LVNV's failure to provide all the documentation allegedly required in a suit to enforce the debt in Nevada state court rendered its claim "unenforceable" under

5

"applicable law" in bankruptcy pursuant to § 502(b)(1) of the Bankruptcy Code. ER-74. The BAP vacated and remanded "for further proceedings as the bankruptcy court deems appropriate." ER-78. LVNV timely appealed the BAP Decision to this Court, which appeal was docketed under No. 22-60037 (the "BAP Appeal"). ER-198.[3]

As set out in LVNV's response to the order to show cause, this Court has jurisdiction over the BAP Appeal under 28 U.S.C. § 158(d)(1), which grants jurisdiction over "appeals from all final decisions, judgments, orders and decrees" of the BAP. The BAP, in turn, has jurisdiction over "appeals … from final judgments, orders, and decrees … of bankruptcy judges" in bankruptcy "cases and proceedings." *Id.* § 158(a)(setting out appellate jurisdiction of district courts in bankruptcy matters); *id.* § 158(b) (providing for bankruptcy appellate panels to hear appeals under § 158(a) with the parties' consent).

In this case, the BAP reviewed the Bankruptcy Court's order allowing LVNV's claim, which was "final" under § 158(a)(1) because it "'finally dispose[d]

---

[3] On September 13, 2022, this Court entered an order requiring that LVNV show cause why this Court had jurisdiction over the BAP Appeal. LVNV responded, asserting that the Court had jurisdiction under 28 U.S.C. § 158(d)(1) because the BAP Decision was a final order. ER-16. This Court then entered an order discharging the order to show cause and directing the parties to address the basis for jurisdiction over the BAP Appeal in their merits briefing. ER-5. LVNV accordingly addresses that issue in this brief.

of [a] discrete dispute[] within the larger case'" and "fix[ed] the rights and

obligations of the parties." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501-502

(2015). The resolution of a creditor's claim against a debtor's estate is a

prototypical discrete dispute within the overall bankruptcy case, and an order

allowing or disallowing a claim is thus final and immediately appealable. *See, e.g.*,

*In re Lane*, 959 F.3d 1226, 1230 (9th Cir. 2020).

"When the … BAP … affirms or reverses" a final decision of the bankruptcy

court, the BAP's order is likewise "final and immediately appealable" to this

Court. *In re Gugliuzza*, 852 F.3d 884, 894 (9th Cir. 2017). Where, as here, the

BAP vacates a final decision and remands to the bankruptcy court, this Court

"applie[s] a four-factor test to determine the order's finality; it considers (1) the

need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest

in preserving the bankruptcy court's role as the finder of fact; and (4) whether

delaying review would cause either party irreparable harm." *Id.* The ultimate goal

is "to avoid piecemeal appeals … and the 'delays and inefficiencies' that result."

*Id.*

Applying that test, this Court has held that a BAP order remanding to the

bankruptcy court with "instructions to engage in 'further fact-finding'" on a central

issue is not final. *Gugliuzza*, 852 F.3d at 894. By contrast, a BAP order

remanding the case is final if the bankruptcy court is limited to mechanical or

ministerial tasks on remand. *Id.* at 895; *see also In re Landmark Fence Co.*, 801 F.3d 1099, 1103 (9th Cir. 2015).

The BAP Decision here falls into the latter category. It did not instruct the Bankruptcy Court to engage in further fact-finding. To the contrary, based on the factual record of the claims-allowance proceeding, the BAP agreed with Debtors that "LVNV did not provide the documentation required to enforce its claim under applicable [Nevada] law" and that LVNV's claim was thus "unenforceable under Nevada law, which is a ground for disallowance." ER-77. While the BAP remanded for "further proceedings," it did not direct the Bankruptcy Court to engage in further fact-finding, nor did it suggest any proceedings that would be appropriate other than the entry of an order disallowing LVNV's claim. On remand, the Bankruptcy Court did precisely that. It conducted no fact-finding or other proceedings and simply entered a two-paragraph order disallowing LVNV's claim "pursuant to" BAP Decision (the "Disallowance Order"). ER-65. Thus, by reviewing the BAP Decision now, this Court will not risk "'piecemeal litigation'"; will not harm "'the bankruptcy court's role as the finder of fact'"; and will promote "'judicial efficiency'" and the best interests of the parties. *Gugliuzza*, 852 F.3d at 894.

Moreover, even if the BAP Decision was not final when LVNV filed its notice of appeal, this Court would still have jurisdiction over the BAP Appeal

under the doctrine of "cumulative finality."  Any prematurity was cured by the

subsequent entry of the Bankruptcy Court's Disallowance Order and the

consolidation of the BAP Appeal and Direct Appeal.  *See In re Linton*, 2022 WL

17077498, at *1 (9th Cir. Nov. 18, 2022); *In re Rains*, 428 F.3d 893, 900-901 (9th

Cir. 2005).

       **Appeal No. 22-16615.**  On September 15, 2022, the Bankruptcy Court

entered the Disallowance Order, a final order disallowing LVNV's claim.  ER-65.

On September 20, 2022, LVNV filed a timely notice of appeal of the Disallowance

Order.  ER-185.  Thereafter, LVNV and Debtors jointly certified the Disallowance

Order for direct appeal to this Court under 28 U.S.C. § 158(d)(2)(A) (the "Direct

Appeal"), and LVNV filed a petition in this Court for direct appeal.  ER-61.  This

Court granted LVNV's petition, and the Direct Appeal was docketed under No. 22-

16615.  This Court has jurisdiction over the Direct Appeal under 28 U.S.C.

§ 158(d)(2)(A).

## ISSUES PRESENTED AND STANDARD OF REVIEW

       This appeal presents the following questions:

       1.     Whether LVNV's claim against Debtors' bankruptcy estate was

"unenforceable" under "applicable law," and thus properly disallowed under 11

U.S.C. § 502(b)(1), because LVNV failed to submit all the documentation that the

BAP interpreted Nevada Rev. Stat. § 97A.160 to require in a lawsuit in state court

to recover on credit-card debt, even though LVNV submitted all the documentation entitling its claim in federal bankruptcy court to prima facie validity under Bankruptcy Rule 3001(f), and Debtors do not dispute that they incurred the credit-card charges at issue or otherwise contest liability. ER-130-131; ER-92-96, 98-103; ER-76-77.

      2.     In the alternative, even if the evidentiary requirements of Nevada Rev. Stat. § 97A.160 are "applicable law" under 11 U.S.C. § 502(b)(1) such that a failure to comply with them would render a claim "unenforceable," whether LVNV failed to comply with those requirements. ER-131-132; ER-76.

      These issues are pure questions of law subject to *de novo* review. *See, e.g.*, *Landis v. Washington State Major League Baseball Stadium Pub. Facilities Dist.*, 11 F.4th 1101, 1105 (9th Cir. 2021). The facts are undisputed, and the Court "must determine only whether the Bankruptcy Appellate Panel's decision is correct as a matter of law." *In re Sluggo's Chicago Style, Inc.*, 912 F.2d 1073, 1074 (9th Cir. 1990). Questions of statutory interpretation, including interpretation of the Bankruptcy Code and the Nevada statutes, are reviewed *de novo*. *See In re PG&E Corp.*, 46 F.4th 1047, 1052 (9th Cir. 2022); *Hunsaker v. United States*, 902 F.3d 963, 966 (9th Cir. 2018). This Court reviews the judgment of the Bankruptcy Court without deference to the BAP Decision. *In re Khan*, 846 F.3d 1058, 1062-1063 (9th Cir. 2017).

**RELEVANT STATUTORY AND LEGAL AUTHORITIES**

Relevant statutory and legal authorities appear in the attached Addendum.

**STATEMENT OF THE CASE**

**A.      Claims-Allowance Proceedings In Bankruptcy**

The central function of bankruptcy is to enable insolvent debtors to contribute their non-exempt assets to a bankruptcy estate, which is distributed among the debtors' creditors according to those creditors' relative priorities (and pro rata among creditors of the same priority) as set forth in the Bankruptcy Code. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 455-457 (2017).  Thus, when a bankruptcy case is filed, an automatic stay takes effect, barring creditors (absent leave from the bankruptcy court) from seeking to pursue actions against a debtor in state court or otherwise to recover from a debtor outside the bankruptcy proceedings; creditors can recover only from the bankruptcy estate in accordance with the priority scheme and procedures set out in the Code.  *See* 11 U.S.C. § 362; *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021).  Debtors who satisfy the Code's requirements can then obtain a discharge of pre-bankruptcy debt.  *See* 11 U.S.C. §§ 727, 1141, 1328.

Accordingly, once a bankruptcy case is filed, creditors who could otherwise have sued a debtor in state court to collect on a state-law debt must instead proceed in a federal forum and follow federal procedure to receive a pro rata recovery from

the bankruptcy estate. Specifically, under the Bankruptcy Code and Rules, creditors who hold a "right to payment" against a debtor may assert a "claim" against the estate in bankruptcy. *See* 11 U.S.C. §§ 501, 502; *see also id.* § 101(5)(A) (defining "claim" as a "right to payment").

Whether a creditor has such a "right to payment" is determined by reference to the substantive law giving rise to that right—usually, state law. "Creditors' entitlements in bankruptcy arise in the first instance from the underlying *substantive* law creating the debtor's obligation," which typically means "that state law governs the *substance* of claims." *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450 (2007) (quotation marks omitted) (emphasis added).

Ultimately, however, the Bankruptcy Code "determine[s] how and what claims shall be allowed" in bankruptcy. *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 163 (1946). The Code and its implementing Rules set out procedures for the assertion and resolution of claims against the estate. Those procedures differ substantially from those governing a lawsuit outside bankruptcy. "The Bankruptcy Code provides streamlined and summary procedures [for claims allowance] 'to secure a prompt and effectual administration and settlement of the estate' of a debtor." *In re Walston*, 606 F. App'x 543, 547 (11th Cir. 2015) (per curiam) (quoting *Katchen v. Landy*, 382 U.S. 323, 328-329 (1966)).

12

Among other differences, a creditor in bankruptcy must file, not a complaint, but a simple form termed a "proof of claim." *See* 11 U.S.C. § 501; Fed. R. Bankr. P. 3001. A proof of claim is "a written statement setting forth a creditor's claim" and executed by the creditor or its agent, Fed. R. Bankr. P. 3001(a)-(b). Rule 3001 specifies the supporting information that must be included. For a claim, like LVNV's, that is unsecured and "based on an open-end or revolving consumer credit agreement," the proof of claim must attach a statement including, as applicable, "(i) the name of the entity from whom the creditor purchased the account; (ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account; (iii) the date of an account holder's last transaction; (iv) the date of the last payment on the account; and (v) the date on which the account was charged to profit and loss." Fed. R. Bankr. P. 3001(c)(3)(A).

Under the Bankruptcy Code, "[a] claim … proof of which is filed under section 501 … is deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). If a party in interest—typically the trustee or debtor—does object, the bankruptcy court, "after notice and a hearing, shall determine the amount of such claim … and shall allow such claim in such amount," except in nine specific circumstances. *Id.* § 502(b). The only potentially relevant exception here is that a claim is disallowed to the extent that "such claim is unenforceable against the

debtor and property of the debtor, under … applicable law." *Id.* § 502(b)(1).

Section 502(b)(1) implements "the basic federal rule in bankruptcy … that state

law governs the *substance* of claims." *Travelers*, 549 U.S. at 450 (quotation marks

omitted) (emphasis added).

A key difference between claims-allowance proceedings in bankruptcy and

most lawsuits outside bankruptcy is that the Bankruptcy Code and Rules establish

a burden-shifting framework for claims allowance. Even if a party in interest

objects to a creditor's claim, "[a] proof of claim executed and filed in accordance

with [Rule 3001] shall constitute prima facie evidence of the validity and amount

of the claim." Fed. R. Bankr. P. 3001(f). The burden shifts to the objecting party

to "produce evidence and show facts tending to defeat the claim by probative force

equal to that of the allegations of the proof of claim themselves." *In re Holm*, 931

F.2d 620, 623 (9th Cir. 1991); *see also Lundell v. Anchor Constr. Specialists, Inc.*,

223 F.3d 1035, 1039-1040 (9th Cir. 2000) (objecting party has "burden of

producing sufficient evidence to negate one or more of the sworn facts in the proof

of claim").

"[A] claim objection that does not actually contest the debtor's liability or

the amount of the debt is not enough" to satisfy that burden. *In re Campbell*, 336

B.R. 430, 434-436 (B.A.P. 9th Cir. 2005). If a party objects to a prima facie valid

claim on the ground that the claim is unenforceable under applicable state law

14

pursuant to § 502(b)(1), the objecting party must provide evidence that the claim is substantively invalid and cannot be enforced under state law—for example, because the debtor never incurred the debt or because the statute of limitations has expired. If—but only if—the objecting party provides evidence meeting that standard and rebutting the presumption of validity, the ultimate burden to prove the claim is determined by applicable non-bankruptcy law. *See Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 21 (2000); *Walston*, 606 F. App'x at 546. If the objecting party cannot rebut the presumption of validity, the claim must be allowed.

### B.    Proceedings Below

#### 1.    LVNV's claim and the Bankruptcy Court's Allowance Order

LVNV is a creditor in Debtors' Chapter 13 bankruptcy case. In May 2021, LVNV timely filed a proof of claim for $7,905.88 in credit-card debt that LVNV had purchased from the original credit-card issuer, Citibank. ER-179. The proof of claim attached a statement setting out all the applicable supporting information required under Rule 3001(c)(3) for claims based on open-end consumer credit agreements. ER-182-184.

Nevertheless, in September 2021, in response to a request from Debtors, LVNV supplied additional documentation for its claim, including copies of account statements covering November 2020 to April 2021 (the five-month period

surrounding the date of Debtors' bankruptcy filing, March 23, 2021), and the terms and conditions of the credit-card agreement. ER-138-163. LVNV also amended its claim to provide additional documentation substantiating its acquisition of the claim. ER-172-178.

Debtors thereafter objected to LVNV's claim. ER-164. Debtors argued that LVNV had not provided an *authenticated* "written application for the credit card account" or *authenticated* "evidence that the cardholder incurred charges on the account and made payments thereon," documentation they claimed was required by Nevada law. ER-167-168. Specifically, Debtors relied on Nevada Rev. Stat. § 97A.160(1), which provides that "in any action brought to collect a debt owed to [a credit-card] issuer," the issuer "may establish that the cardholder is contractually liable for the debt owed by submitting the [cardholder's] written application for a credit card account … or evidence that the cardholder incurred charges on the account and made payments thereon" and sets out procedures for authentication of those documents. ER-167-168.

LVNV opposed Debtors' objection, arguing that LVNV's claim was prima facie valid in bankruptcy court under Fed. R. Bankr. P. 3001(f). ER-130-131. LVNV contended that Debtors had not rebutted the claim's prima facie validity because they had not disputed any of the sworn facts set forth in the proof of claim establishing the debt and its amount. ER-131. LVNV also argued that, while non-

16

compliance with the Nevada statutory requirements was not a valid basis for disallowing LVNV's claim, LVNV had in any event satisfied those requirements. ER-131-132.

The Bankruptcy Court overruled Debtors' objection to LVNV's claim "[f]or all the reasons set forth in [LVNV's] [O]pposition." ER-111 at 2:15-16. It then entered an order allowing LVNV's claim. ER-107 (the "Allowance Order").

## 2.    The BAP Decision and the BAP Appeal

Debtors appealed the Allowance Order to the BAP. Following briefing and argument, the BAP issued the BAP Decision, vacating the Allowance Order. ER-69.

The BAP acknowledged that LVNV had provided all the documentation required by Rule 3001 to entitle its claim to prima facie validity, and that Debtors did not dispute that LVNV was the proper holder of the debt or that Debtors had incurred and not paid the charges in LVNV's claim. ER-73. In particular, the BAP recognized that "Debtors do not deny opening the [credit-card] account and making charges on it or otherwise deny liability for the claim, nor … provide any substantive evidence to refute [the claim's] prima facie validity." ER-77.

But the BAP agreed with Debtors that Nevada Rev. Stat. § 97A.160 applied to the claims-allowance proceedings in the Bankruptcy Court and that the Nevada statutes required LVNV to provide either an authenticated "written application for

17

a credit card account" or authenticated "evidence that the cardholder incurred charges on the account and made payments thereon." ER-74-76. The BAP concluded that the documentation LVNV had provided did not satisfy the requirements of Nevada Rev. Stat. § 97A.160 and § 97A.165, which provides that in a collection action in state court "[n]o judgment in favor of [a] purchaser of credit card debt . . . may be entered unless" the purchaser "has satisfied the standards of proof set forth" in § 97A.160. ER-76. While LVNV provided account statements for the period November 2020 to April 2021, the BAP reasoned that "there was no evidence of any of the charges making up the beginning balance or who made them," and "the statements were not authenticated by a custodian of written records." ER-76. On this basis, the BAP held that LVNV's claim was "unenforceable" under "applicable law" and thus subject to disallowance under 11 U.S.C. § 502(b)(1). ER-77.

LVNV filed a timely notice of appeal of the BAP Decision ER-198, initiating the BAP Appeal (No. 22-60037).

### 3. The Bankruptcy Court's Disallowance Order and the Direct Appeal

In light of the BAP's remand to the Bankruptcy Court, LVNV and Debtors agreed that the BAP Decision left nothing for the Bankruptcy Court to do other than to enter an order disallowing LVNV's claim. On September 15, 2022, the Bankruptcy Court entered the Disallowance Order, decreeing that "[p]ursuant to

the reasoning of the decision of the Bankruptcy Appellate Panel for the Ninth Circuit, … Proof of Claim No. 19, filed by LVNV Funding, LLC, is DISALLOWED in its entirety under 11 U.S.C. § 502(b)(1)."  ER-66.

On September 20, 2022, LVNV filed a timely appeal of the Disallowance Order, ER-185, and LVNV and Debtors jointly filed a certification for direct appeal to this Court pursuant to 28 U.S.C. § 158(d)(2).  ER-61.  LVNV then filed a petition for direct appeal in this Court, which this Court granted, initiating the Direct Appeal under No. 22-16615.  ER-36.

This Court subsequently consolidated the BAP Appeal and the Direct Appeal.  ER-2.

## SUMMARY OF ARGUMENT

Disagreeing with the Bankruptcy Court's original decision, the BAP held that LVNV's purported failure to comply with Nevada law specifying the procedural requirements in an action to collect a debt in state court rendered LVNV's claim not "enforceable" under "applicable law" and subject to disallowance in Debtors' bankruptcy proceedings under 11 U.S.C. § 502(b)(1). That conclusion is wrong as a matter of law for two reasons.

*First*, it disregards the fundamental principle that, in diversity or other actions in which state law governs the substance of the dispute, federal rules govern procedure in federal court.  In *Erie v. Tompkins*, the Supreme Court

19

established the basic principle that federal courts apply state substantive law but federal procedural law.  The Supreme Court reinforced this principle in *Hanna v. Plummer*, holding that, in federal court, where a valid federal rule of procedure conflicts with a state rule of procedure, the federal rule controls.

Here, the applicable federal rule so conflicts with the state rule.  Answering precisely the same question—what documentation and other information must a claimant provide in support of its claim when asserting that the debtor is indebted to it on an open-ended (credit card) account—the federal and state rules provide conflicting answers.  The federal rule, Bankruptcy Rule 3001, requires that the claimant provide various information, including the name of the entity from whom the claimant acquired the account and the dates of the last transaction and payment by the debtor on the account, but it does not require that the claimant provide evidence of the charges constituting the account's opening balance or furnish "authenticated" copies of the original account application and account statements. Fed. R. Bankr. P. 3001(c)(3).  In contrast, the Nevada rule (at least as interpreted by the BAP) does require such documentation for a collection action filed in state court.  Nev. Rev. Stat. § 97A.160.

Accordingly, in this proceeding in federal bankruptcy court, the federal rule governed.  LVNV complied with it; as the Debtors acknowledge, LVNV provided all the information Bankruptcy Rule 3001 requires for a proof of claim based on

20

credit card debt. Under Rule 3001(f), that made the claim "prima facie … valid[]," and the burden shifted to the Debtors to show why the claim was not "enforceable" as a matter of applicable state substantive law under § 502(b)(1) of the Bankruptcy Code. They have never made such a showing; indeed, they have never even claimed (let alone presented any evidence) that they did not incur the unpaid charges or that they have any substantive defense to payment of the debt. That should be the beginning and the end of this case.

But, *second*, even if Nevada procedure controlled, LVNV complied with it. The BAP misread the Nevada rule covering collection actions in state court as requiring specific forms of evidence to substantiate the creditor's claim, including authenticated account statements and opening agreements, when instead the applicable statutes merely provide a creditor with one method of proving its claim, without limiting the use of other methods of proof deemed sufficient in Nevada courts, such as the ones LVNV provided.

## ARGUMENT

### I. FEDERAL LAW, NOT STATE LAW, GOVERNS THE DOCUMENTATION A CREDITOR MUST PROVIDE IN SUPPORT OF A PROOF OF CLAIM FILED IN FEDERAL BANKRUPTCY COURT, AND LVNV PROVIDED THAT DOCUMENTATION

As discussed above, claims-allowance proceedings in bankruptcy are a means for distributing a federal bankruptcy estate pursuant to special federal rules of procedure among a group of creditors who hold valid claims under state

substantive law.  As such, claims-allowance proceedings require the application of both state and federal law.

As this Court has recognized, bankruptcy courts adjudicating claims-allowance proceedings—like federal courts sitting in diversity—are required to apply state substantive law and federal procedural law according to the principles of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).  *See, e.g.*, *In re Larry's Apartment, LLC*, 249 F.3d 832 (9th Cir. 2001) (applying federal law to sanctions in a claims-allowance proceeding, even though state law provided the substantive rule of decision for the underlying claim, because sanctions rules are procedural).  State substantive law determines whether a creditor possesses a valid right to payment giving rise to a claim in bankruptcy, while federal law determines the procedure through which a creditor prosecutes that claim in bankruptcy court.  *See supra* pp. 11-15.  Moreover, where a valid federal rule of procedure promulgated by the Supreme Court—here, Bankruptcy Rule 3001—governs a procedural issue in federal court, that rule trumps any contrary state rule.  *Hanna v. Plumer*, 380 U.S. 460 (1965).

The BAP erred as a matter of law by ignoring those basic principles and applying state procedural law that (as interpreted by the BAP) conflicts with the claims-allowance procedures set out in the federal Bankruptcy Code and Bankruptcy Rules.  Specifically, the BAP acknowledged that LVNV had provided

22

all the information required by Bankruptcy Rule 3001, rendering LVNV's claim prima facie valid. Under the Bankruptcy Code and Rules (and this Court's precedent), a prima facie valid claim can be rebutted only by a showing that the claim is *substantively* unenforceable under state law—for example, because the debt was never actually incurred or because the limitations period for enforcing the debt had expired. The BAP agreed that Debtors had made no such showing.

Instead, the BAP held that LVNV's claim was not "enforceable" under "applicable" state law because LVNV had not submitted the precise documentation the BAP read Nevada law to require in a lawsuit in state court. But, as interpreted by the BAP, that Nevada law conflicts with Bankruptcy Rule 3001, which is a valid procedural rule specifying the documentation necessary for a proof of claim in federal bankruptcy court. The Nevada statutes are thus not "applicable" in bankruptcy proceedings, and LVNV's supposed failure to comply with them is not a ground for disallowance of LVNV's claim. Rather, since LVNV submitted a prima facie valid claim and Debtors offered nothing to rebut its validity, LVNV's claim must be allowed.

### A. Rule 3001 Is A Valid Federal Rule Of Procedure That Specifies The Documentation Necessary For An Allowable Proof Of Claim And Therefore Trumps The Nevada Statutes

Both the Supreme Court and this Court have long recognized that where a valid federal rule of procedure conflicts with a state rule, the federal rule controls

in federal court. *See Hanna v. Plumer*, 380 U.S. 460, 470-474 (1965); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398, 406-407 (2010); *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1 (1987); *Martin v. Pierce Cnty.*, 34 F.4th 1125 (9th Cir. 2022); *see also In re Cardelucci*, 285 F.3d 1231, 1235 (9th Cir. 2002) (applying *Hanna* in bankruptcy). Under *Hanna*, a federal court must determine whether the state law in question conflicts with a federal rule of procedure by asking whether the federal rule "answers the same question" as the state rule. *Martin*, 34 F.4th at 1128 (quotation marks omitted). If there is such a conflict, the federal rule controls so long as it is valid under the relevant enabling statute—that is, it is a "general rule" of "practice [or] procedure" that does not "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075 (Bankruptcy Rules Enabling Act); *see Martin*, 34 F.4th at 1128. Where a federal rule passes the *Hanna* test, there is no need for any further inquiry under *Erie*. *See Martin*, 34 F.4th at 1128-1129.

This principle is dispositive here. Rule 3001's provisions specifying the documentation necessary to render a proof of claim prima facie valid (and thus allowed unless rebutted) in federal bankruptcy court plainly conflict with the Nevada statutory requirements as construed by the BAP; indeed, the BAP itself concluded that LVNV's proof of claim satisfied Rule 3001, but not the Nevada statutes, making clear that the two sets of procedural requirements are, as

interpreted by the BAP, in conflict. And Rule 3001 falls squarely within the core of the rulemaking power under the Bankruptcy Rules Enabling Act. It is simply a rule regulating "the judicial process for enforcing rights and duties recognized by substantive law." *Hanna*, 380 U.S. at 464 (quotation marks omitted).

### 1. The Nevada statutes conflict with the Bankruptcy Rules

Bankruptcy Rule 3001 implements the claims-allowance procedure set out in the Bankruptcy Code. As discussed above, that procedure differs substantially from the procedure governing a lawsuit outside bankruptcy. Unlike in a state-court action, a creditor is not required to file a complaint. Instead, the creditor files a simple proof of claim form, which is "'not intended to be an elaborately detailed document[].'" *In re Walston*, 606 F. App'x 543, 547 (11th Cir. 2015). The claim is then allowed unless a party in interest objects. 11 U.S.C. § 502(a). And "[u]nlike in a state court [action]," even if the debtor does object, "the proof of claim is *prima facie* evidence of the validity of the claim" so long as it complies with Rule 3001. *In re Southern Cal. Plastics, Inc.*, 165 F.3d 1243, 1247-1248 (9th Cir. 1999). "[T]he debtor must come forward with evidence to rebut the presumption of validity," or a prima facie valid claim must be allowed. *Id.* at 1248.

These fundamental differences in the procedure applicable to the prosecution and resolution of a creditor's claim in bankruptcy make perfect sense in light of the

basic differences between a bankruptcy case in federal court and a lawsuit in state court.  Every year, tens of thousands of bankruptcy cases are filed across the nation.[4]  And, in every such case, any single proof of claim filed by a creditor is just one small part of the overall bankruptcy proceedings, which can also encompass disputes over the dischargeability of a particular debt or the debtor's entitlement to a discharge at all, turnover, preference, and other litigation to enlarge the estate for the benefit of all creditors, and (in a Chapter 11 or 13 case) the development and confirmation of a plan.  *See, e.g.*, 11 U.S.C. §§ 523, 542, 547, 727, 1129, 1141, 1325, 1328.

Congress and the authors of the Bankruptcy Rules, therefore, determined that it was necessary for a uniform set of procedural rules to apply in bankruptcy cases and for claims-allowance proceedings to be truncated.  "The Bankruptcy Code provides streamlined and summary [claims-allowance] procedures 'to secure a prompt and effectual administration and settlement of the estate' of a debtor." *Walston*, 606 F. App'x at 547 (quoting *Katchen v. Landy*, 382 U.S. 323, 328-329 (1966)).  As one court has put it:

> The fundamental purpose of the claims allowance process and the various rules for filing of proofs of claim and allocating burdens of

---

[4] In the 12 months ending September 2022, 383,810 individuals and entities filed for bankruptcy in the United States, a figure that was even higher (434,540) the prior year.  *See* U.S. Courts, *Bankruptcy filings Continue to Fall* (Oct. 31, 2022), https://tinyurl.com/4srp4n3c.

> proof [*i.e.*, production] is to provide a fair and inexpensive procedure for the proper determination of claims on the merits. … The bankruptcy rules … envision much simpler, expedited proceedings without all the trappings of normal civil litigation. They do not envision the determination of claims based on procedural technicalities such as whether a proof of claim includes adequate documentation.

*In re Shank*, 315 B.R. 799, 814 (Bankr. N.D. Ga. 2004); *accord In re Crutchfield*, 492 B.R. 60, 68 (Bankr. M.D. Ga. 2013).

Bankruptcy Rule 3001 is a critical part of the simplified, burden-shifting procedure that the Bankruptcy Code and Rules provide for claims-allowance proceedings. *See In re Plourde*, 418 B.R. 495, 504 n.12 (B.A.P. 1st Cir. 2009) (quoting *In re Burkett*, 329 B.R. 820, 827 (Bankr. S.D. Ohio 2005)) (noting that "documentary requirements and the shifting burden [of Rule 3001] … simplify the claims allowance process and provide a fair and inexpensive process"); *In re Davenport*, 544 B.R. 245, 251 (Bankr. D.D.C. 2015) (Rule 3001 is a "rule of *procedure*, not *substance*, and helps to secure the 'just, speedy and inexpensive determination of every case and proceeding'").

Indeed, in 2011, the drafters of the Bankruptcy Rules amended Rule 3001 to limit the information that holders of unsecured claims based on open-end consumer credit agreements (such as credit-card agreements) must provide in a proof of claim. *See* Fed. R. Bankr. P. 3001 Committee Notes—2011 Amendment II. The

2011 amendments eliminated the requirement that such creditors provide a copy of the credit agreement with their proof of claim. *Id.*[5]

Instead, they chose to require such creditors to provide five specific items of information, and *only* those five items: "(i) the name of the entity from whom the creditor purchased the account; (ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account; (iii) the date of an account holder's last transaction; (iv) the date of the last payment on the account; and (v) the date on which the account was charged to profit and loss." Fed. R. Bankr. P. 3001(c)(3)(A). The drafters deemed this information sufficient to allow debtors to "associat[e] the claim with a known account" and "assess[] the timeliness of the claim." Fed. R. Bankr. P. 3001 Committee Notes—2011 Amendment II. The drafters thus chose to keep the claims-allowance process

---

[5] The Rule requires creditors to provide a debtor with the credit agreement on the debtor's written request. Fed. R. Bankr. P. 3001(c)(3)(B). But failure to do so (because, for instance, a purchaser of credit card debt from the original issuer does not have access to the underlying agreement) does not negate the prima facie validity of a proof of claim that otherwise complies with Rule 3001. *See* Fed. R. Bankr. P. 3001 Committee Notes—2011 Amendment II; *Order Overruling Objections to Claims* 4, *In re Russell*, No. 22-10083 (D. Me. Jan. 19, 2023) [ECF No. 67] (quoting the Committee Notes for the proposition that "failure to provide the [account agreement] does not itself constitute grounds for disallowance of a claim"); *Crutchfield*, 492 B.R. at 69 & n.5.

simple and manageable by requiring only that necessary information and not more cumbersome documentation. *See Crutchfield*, 492 B.R. at 66-70.[6]

As the BAP and Debtors agreed, LVNV provided the information required by Rule 3001(c)(3)(A) and complied with the other requirements of Rule 3001. ER-73. Accordingly, LVNV's proof of claim was "prima facie evidence of the validity and amount" of its claim. Fed. R. Bankr. P. 3001(f).

That prima facie validity shifted the burden of production to Debtors, which had to come forward with evidence sufficient to negate the substantive allegations of the proof of claim. As this Court has explained:

> Inasmuch as Rule 3001(f) and section 502(a) provide that a claim or interest as to which proof is filed is "deemed allowed," the burden of initially going forward with the evidence as to the validity and the amount of the claim is that of the objector to that claim. In short, the allegations of the proof of claim are taken as true. If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim. Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations themselves.

---

[6] The drafters of Rule 3001 could have required a creditor to provide the same supporting documentation that would be required in state court had they wanted to do so. For example, another section of the same Rule states that, for claims related to ownership of grain, certain evidence constitutes prima facie evidence of the validity and amount, except "[t]o the extent not inconsistent with the United States Warehouse Act or *applicable State law*[.]" Fed. R. Bankr. P. 3001(g) (emphasis added). By contrast, there is no comparable provision referencing state law evidentiary requirements for claims based on an open-end consumer credit agreement.

*In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 King, *Collier on Bankruptcy* § 502.02 (15th ed. 1991)); *see also, e.g.*, *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1992) (to overcome a claim's presumptive validity, "the objector must produce evidence which, if believed, would refute at least one of the [factual] allegations that is essential to the claim's legal sufficiency").

Accordingly, a prima facie valid proof of claim, such as LVNV's here, prevails over "a mere formal objection" that does not provide evidence contravening the debtor's liability or the amount of the claim. *Holm*, 931 F.2d at 623 (emphasis omitted). A debtor, trustee, or other party cannot simply object to a claim on the ground that the proof of claim did not provide "sufficient evidence to prove the existence of the debt"; the objector must produce evidence tending to *disprove* the existence of the debt. *In re Garner*, 246 B.R. 617, 620 (B.A.P. 9th Cir. 2000).

*Garner* is illustrative. There, the court held that a debtor's objection to a proof of claim that complied with "the minimal requirements" of Rule 3001 was insufficient because the objection simply denied that the debtor was obligated on the claim and stated that there were "no written documents or other competent evidence of any valid obligations." 246 B.R. at 620, 622. The court explained: "The proof of claim is more than 'some' evidence; it is, unless rebutted, 'prima facie' evidence. One rebuts evidence with counter-evidence. The difficulty in this

30

instance is that appellant proffered no evidence whatsoever, choosing instead to stand on a mere formal objection that the proofs of claim were not good enough." *Id.* at 623. The debtor's objection was thus "not adequate to rebut the Rule 3001(f) evidentiary presumption." *Id.*

The same analysis applies here. As the BAP recognized, Debtors failed even to allege that they did not owe the charges or that the statute of limitations had expired, let alone provide evidence to support such an allegation. ER-77. Rather, Debtors' sole basis for objecting to LVNV's claim was that LVNV had not provided all the documentation Debtors claimed Nevada law would require in a state court action. *Id*.

That was insufficient to overcome the presumptive validity of LVNV's claim. "[A] claim objection that does not actually contest the debtor's liability or the amount of the debt is not enough to disallow a proof of claim." *In re Campbell*, 336 B.R. 430, 434-436 (B.A.P. 9th Cir. 2005); *see also, e.g.*, *In re Premier Golf Props., LP*, 564 B.R. 660, 709 (Bankr. S.D. Cal. 2016) ("[A] claim objection cannot simply assert a lack of documentation or substantiation; it must dispute the liability or amount of the claim."); *In re Lasky*, 364 B.R. 385, 389 (Bankr. C.D. Cal. 2007) ("[A] claim objection must, at minimum, actually contest the debtor's liability or the amount of the debt for the Court to be able to disallow a proof of claim."); *In re Habiballa*, 337 B.R. 911, 917 (Bankr. E.D. Wis. 2006) ("A

claim that meets the minimum requirements enjoys *prima facie* status, and in order to succeed on a claim objection, the objecting party must produce 'probative evidence of equal force'" contravening the allegations in the proof of claim, such as "'an affidavit from a debtor asserting that it is not the obligor on the debt, or an accounting summary listing all of a debtor's credit-card charges to show that a debt was improperly calculated.'"); *Order Overruling Objections to Claims* 6, *In re Russell*, No. 22-10083, (D. Me. Jan. 19, 2023) [ECF No. 67] (providing that debtors are required to "come forth with substantial evidence to rebut" a claim that complies with Rule 3001 and that is, therefore, presumptively valid).

      Given this settled law, the first step of the *Hanna* inquiry is straightforward. Bankruptcy Rule 3001 answers the question of what information or evidence a creditor must provide in bankruptcy court to recover on its claim: The creditor must comply with Rule 3001's requirements, nothing less but also nothing more. The Nevada statutes the BAP held applicable purportedly answer the same question, but—at least as construed by the BAP— provide a different answer: Under the Nevada statutes, as the BAP interpreted them, the creditor must provide evidence of the account's "beginning balance" and "produce either an authenticated written credit-card application or authenticated evidence that Debtors incurred charges on the account and made payments thereon." ER-76 (citing Nev. Rev. Stat. § 97A.160(1)(a)).

Bankruptcy Rule 3001, and the Bankruptcy Code provisions it implements, contain no such requirements. Rather, the 2011 amendments to Rule 3001 eliminated the prior requirement that a creditor attach a copy of the credit-card agreement (let alone an authenticated one) to its proof of claim and instead require a proof of claim to include only the five specific items of information, all of which LVNV provided. The drafters made this amendment to "promote[] the goals of an efficient claims allowance process that minimizes economic burdens on the creditor without in any way limiting the debtor's ability to challenge a claim for any of the substantive bases enumerated in § 502." *Crutchfield*, 492 B.R. at 68. By requiring LVNV to provide additional evidence of its claim beyond the information that establishes the claim's prima facie validity under Rule 3011, the Nevada statutes—as interpreted by the BAP—conflict with and undermine Rule 3001.

In *Martin*, this Court addressed a similar question in the context of a diversity suit. *Martin* held that Federal Rule of Civil Procedure 8, which provides that a complaint must contain a short and plain statement of the claim for relief, conflicted with a Washington state statute requiring a plaintiff to file a declaration electing or declining arbitration when bringing a medical malpractice suit. 34 F.4th at 1129-1130. The Court noted that there was a "growing consensus" that state-law requirements that malpractice suits be accompanied by a "certificate of

33

merit" conflict with the notice-pleading standard of Rule 8 and are thus inapplicable in federal court. *Id.* Similarly, this Court reasoned that, by requiring the specified elements for a complaint, Rule 8 "implicitly excludes other requirements," including a statement regarding arbitration. *Id.* at 1130. The Court rejected the district court's reasoning that the arbitration-statement requirement was "not a pleading requirement because its purpose [is] to prevent litigation of frivolous medical malpractice actions," explaining that "[t]he relevant inquiry is not whether the federal and state rules share a purpose but whether the Federal Rules answer the question in dispute." *Id.* (quotation marks and brackets omitted).[7]

---

[7] In two recent cases, this Court held that state law did not conflict with Federal Rule of Civil Procedure 23. *See Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575 (9th Cir. 2022); *Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262 (9th Cr. 2022). Neither case concerned the federal rules for proofs of claim in bankruptcy, and both are readily distinguishable. *Hamilton* held that Rule 23 "does not govern" cases under the California Private Attorneys General Act. 39 F.4th at 584-585. Similarly, *Ellis* held that Arizona law requiring that a plaintiff suing a state agency must first file a notice of claim with the state did not conflict with Rule 23, since that provision applied to "individual and class claims alike" and did not purport to impose requirements for a class action in federal court beyond those specified in Rule 23. 24 F.4th at 1269. Here, in contrast, Bankruptcy Rule 3001 governs proofs of claim in bankruptcy cases, and the Nevada rules (as interpreted by the BAP) impose requirements for such proofs of claim in addition to and directly contrary to those set forth in Rule 3001. Moreover, in both cases, the plaintiff chose to sue in federal court, a fact this Court stressed in *Hamilton*, noting that a decision that state law did not apply could encourage forum shopping. 39 F.4th at 584 n.3. Here, it was Debtors, not LVNV, that filed for federal bankruptcy protection.

The same reasoning applies here. Just as Civil Rule 8 sets minimal, notice-pleading requirements for complaints, Bankruptcy Rule 3001 sets relatively minimal requirements for a proof of claim. And just as state laws requiring additional allegations in or filings accompanying a complaint in state court conflict with Civil Rule 8, state law requiring additional evidentiary support for an action in state court conflicts with Bankruptcy Rule 3001, undermining its goal of keeping claims-allowance proceedings in bankruptcy simple and manageable.

Indeed, courts have recognized the common-sense proposition that state-law evidentiary requirements that place a greater burden on creditors than the requirements of Rule 3001 conflict with that Rule. The Eleventh Circuit, for example, rejected the argument that a holder of credit-card debt should be required to comply with Georgia evidentiary rules. It explained that "Rule 3001 sets forth the requirements for a proof of claim" and that "requiring a claimant to produce additional evidence" allegedly required by state law "directly undermines Rule 3001, which provides that when a claimant attaches the documents required under the rule, it may 'refrain from presenting additional evidence because the documents establish prima facie evidence of the validity of the claim.'" *Walston*, 606 F. App'x at 547. Placing that "additional burden on the claimant," the court concluded, "is inconsistent with" the streamlined claims-allowance procedures established by the Bankruptcy Rules. *Id.*; *see also Crutchfield*, 492 B.R. at 65-68,

73-76 (refusing to require creditor that satisfied requirements of Rule 3001 to comply with Georgia evidentiary rules that purportedly required additional documentation because doing so would undermine the "simple, manageable process" Congress created for claims allowance in bankruptcy). That logic applies equally here and compels the conclusion that the Nevada statutes, as interpreted by the BAP, conflict with Rule 3001.[8]

## 2. Bankruptcy Rule 3001 is valid under the Bankruptcy Rules Enabling Act

The Bankruptcy Rules Enabling Act provides that "[t]he Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11," but

---

[8] The Nevada statues as interpreted by the BAP also conflict with Bankruptcy Rule 9017 and the Federal Rules of Evidence. *See* Fed. R. Bankr. P. 9017 (Federal Rules of Evidence apply in bankruptcy). The BAP noted that the account statements provided by LVNV "were not authenticated by a custodian of written records," even though LVNV had provided an affidavit from a custodian of LVNV's records, presumably because the affidavit was from a custodian for LVNV, not a custodian for Citi, the issuer. ER-76. But such an affidavit was sufficient to authenticate those records under the Federal Rules of Evidence, which apply in bankruptcy. *See United States v. Childs*, 5 F.3d 1328, 1333 (9th Cir. 1993) (exhibits can be admitted as business records of an entity, even when that entity was not the maker of those records, so long as the other requirements of Rule 803(6) are met and the circumstances indicate the records are trustworthy: "Although these documents were furnished originally from other sources, [the dealership employee] testified that they were kept in the regular course of the dealership's business. In effect, they were integrated into the records of the dealership and were used by it.").

36

that "[s]uch rules shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075.

Neither the BAP nor the Debtors ever suggested that Rule 3001 is invalid under the Enabling Act. That is understandable. There is a strong presumption that federal rules of procedure, including the Bankruptcy Rules, were properly promulgated under the applicable enabling statute and do not impinge on substantive rights. *See, e.g.*, *Hanna*, 380 U.S. at 471 ("When a situation is covered by one of the Federal Rules, … the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions"); *In re Zimmerman*, 156 B.R. 192, 196 (Bankr. W.D. Mich. 1993) ('[Federal] rules are strongly presumed to be within the guidelines of their enabling statute" and "to reflect Congress's intent"; "because of the rigorous adoption process there is a strong presumption that the rules correctly reflect the dichotomy between substantive law and procedural law."); *In re Longoria*, 400 B.R. 543, 550 (Bankr. W.D. Tex. 2009) (Bankruptcy "Rules are entitled to a presumption that they were promulgated within the proper authority of the Supreme Court and do not affect substantive rights"). And Rule 3001 fits comfortably within the scope of the Bankruptcy Rules Enabling Act.

37

To start, Rule 3001 is a rule of procedure.  Under *Hanna*, a federal rule is procedural if it regulates "the judicial process for enforcing rights and duties recognized by substantive law."  380 U.S. at 464 (internal quotation marks omitted).  That is precisely what Rule 3001 does; it implements the procedural framework established by the Bankruptcy Code to enable creditors to enforce, in the federal bankruptcy forum and against the federal bankruptcy estate, their rights to payment from the debtor arising under substantive state law.  Rule 3001 regulates the claims-allowance *process*, not what constitutes an enforceable right to payment as a matter of *substantive* law.  *See, e.g.*, *Crutchfield*, 492 B.R. at 68 ("Rule 3001 governs claims procedures and does not create substantive law."); *cf. Zimmerman*, 156 B.R. at 197 (explaining that "the enumerated grounds for denying allowance of a claim under § 502(b) are addressed to … substantive matters" and contrasting Bankruptcy Rule 3002, which "concerns itself with the procedure which must be followed in filing a claim").

Nor does Rule 3001 "abridge, enlarge, or modify any substantive right."  28 U.S.C. § 2075.  "Undoubtedly most alterations of the rules of practice and procedure may and often do affect the rights of litigants," but that does not mean that the federal rule is invalid.  *Hanna*, 380 U.S. at 464-465.   The question is whether the federal rule impermissibly modifies the substantive "rules of decision

38

by which th[e] court will adjudicate [a litigant's] rights." *Id.* at 465.  Rule 3001 does no such thing.

In bankruptcy, debtors' and creditors' substantive rights are governed by the Bankruptcy Code, which in turn incorporates aspects of state law.  Thus, as discussed, "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying *substantive* law creating the debtor's obligation," which typically means "that state law governs the *substance* of claims." *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450 (2007) (quotation marks omitted) (emphasis added).  But the Bankruptcy Code "determine[s] how and what claims shall be allowed," setting out specific procedural rules for claims-allowance proceedings. *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 163 (1946).  The Code itself provides that a proof of claim "is deemed allowed, unless a party in interest … objects."  11 U.S.C. § 502(a).  Rule 3001 merely implements that burden-shifting structure for claims-allowance proceedings by specifying what information a proof of claim must include to be prima facie valid. *See, e.g.*, *Garner*, 246 B.R. at 620 ("There is an evidentiary presumption that a correctly prepared proof of claim is valid as to liability and amount.  The sources of this presumption lie both in the Bankruptcy Code and in the Federal Rules of Bankruptcy Procedure.").

Rule 3001 governs only the process through which evidence relating to creditors' claims is presented to the bankruptcy court. It does not alter the substantive rule of decision that the court applies to determine the validity of a disputed claim. Nor does it alter the ultimate burden of proof on the claim, which is determined by non-bankruptcy law. *See, e.g.*, *Walston*, 606 F. App'x at 546.

Indeed, one of the bankruptcy courts in this Circuit has a local rule requiring that "objections to claims be supported by admissible evidence that is filed with the objection." *Garner*, 246 B.R. at 624 (citing Bankr. C.D. Cal. Local Rule 3007-1). That local rule, like Rule 3001, is designed to implement the burden-shifting procedure established by the Bankruptcy Code for claims-allowance proceedings. *See id.* at 624-625 (explaining that the rule regulates the nature and timing of the "evidentiary showing" the objector must make "to rebut the Rule 3001(f) presumption"). The BAP has held that Local Rule 3007-1 is a proper procedural rule consistent with the Bankruptcy Rules Enabling Act, *see id.*, and Rule 3001 is likewise consistent with the Act.

*****

In short, Rule 3001 is a valid Federal Rule of Bankruptcy Procedure that is well within the scope of the Bankruptcy Rules Enabling Act. Rule 3001's provision that a proof of claim containing the information specified therein is prima facie valid (and must therefore be rebutted by actual evidence contravening

40

liability or amount, or else allowed) squarely conflicts with the Nevada statutes' putative requirement that a creditor must supply additional information. Rule 3001 therefore trumps the Nevada procedural statutes in bankruptcy.

### B. The Nevada Statutes Are Not "Applicable Law," And Failure To Comply With The Nevada Statutes Does Not Render A Claim "Unenforceable" Under § 502(b)(1)

The BAP Decision ignored the obvious conflict between Rule 3001 and the Nevada statutes. The BAP acknowledged, but dismissed, the ample caselaw discussed above, reading it to hold merely that Rule 3001 is not itself "applicable law" under § 502(b)(1) and that failure to comply with Rule 3001 is not grounds for disallowance. ER-77. It then concluded, with little if any supporting analysis, that the Nevada statutes' procedural requirements *were* "applicable law" and that LVNV's putative failure to comply with those requirements rendered its claim "unenforceable" under § 502(b)(1). ER-76-77.

The BAP's reasoning was fatally flawed because it failed to realize that Rule 3001 necessarily supersedes any contradictory state-law procedural requirements for asserting a claim in state court. *See supra* Part I.A. And while that alone is sufficient to require reversal of the BAP Decision and the Disallowance Order, the BAP also erred for an additional reason: It failed to realize that state procedural requirements such as the Nevada statutes here are not "applicable law" that can render a claim "unenforceable" under § 502(b)(1). *See, e.g.*, *Larry's Apartment*,

249 F.3d at 837-838 (holding that bankruptcy courts adjudicating issues such as claims-allowance with a state-law component, like federal courts sitting in diversity, must "'apply state substantive law and federal procedural law,'" and that "the need for uniform and expeditious handling of bankruptcy cases makes it even more important that federal, not state" procedure applies); *see also Freteluco v. Smith's Food & Drug Ctrs., Inc.*, 336 F.R.D. 198, 203 (D. Nev. 2020) (stating that a Nevada Rule of Evidence reflected a "procedural preference expressed by the state courts which does not control our exercise of discretion" under relevant federal procedural rule). Moreover, the very Nevada statutes on which the BAP relied make clear that they apply only to collection actions in Nevada courts, not to claims-allowance proceedings in federal bankruptcy court.

### 1. State procedural and evidentiary rules are not "applicable law" that can render a claim "unenforceable" under § 502(b)(1)

The body of caselaw the BAP wrongly dismissed holds that when a creditor complies with Rule 3001, its proof of claim is presumptively valid and an objector must come forward with evidence showing the claim is invalid under substantive state law—and not merely contrary to state court procedure. By doing so, those cases make clear that state procedural requirements are not "applicable law" that can render a claim "unenforceable" under § 502(b)(1). Indeed, several courts have expressly addressed the question whether state procedural rules similar to the

Nevada statutes here are "applicable law" under § 502(b)(1) and have concluded that they are not.

In *Walston*, 606 F. App'x 543, for example, the Eleventh Circuit rejected precisely the same argument the BAP accepted here. The debtor there objected to a proof of claim on the ground that it was unenforceable under applicable law pursuant to § 502(b)(1) because the creditor had not accompanied the proof of claim with the admissible evidence that would be necessary to prove up the claim under Georgia rules—even though the creditor had complied with Rule 3001. *See id.* at 545. Much like Debtors here, the *Walston* debtor argued that "the debts are not collectible under state law and therefore cannot be collectible in bankruptcy. Simply relying on the summary nature of the claims filing process, essentially saying that the evidence attached is 'good enough' for allowance in bankruptcy, does not change the fact that the evidence is not 'good enough' under Georgia law." Brief for Appellant, *In re Walston*, 2014 WL 7503816, at *4 (11th Cir. Dec. 31, 2014).

The Eleventh Circuit disagreed. "Although [the debtor] cast[] his argument as a challenge to the enforceability of [the creditor's] claims under applicable law" pursuant to § 502(b)(1), the court recognized that he was in fact arguing that the creditor "has inadequate evidence to support its claims even though they are prima facie valid" under Rule 3001. *Walston*, 606 F. App'x at 547 & n.7. That objection

was insufficient, the court explained, because treating state rules of evidence as "applicable law" that must be satisfied for a claim to be enforceable under § 502(b)(1) would contradict the burden-shifting scheme for claims-allowance proceedings established by the Bankruptcy Code and Rules:  "[The creditor's] proof of claim is prima facie evidence of the validity of its claims under the Bankruptcy Code and procedural rules.  He cannot overcome the prima facie validity of the claims simply by objecting.  Instead, he must support his objections with *evidence* to negate a fact set forth in the proof of claim."  *Id.* at 548 (emphasis in original).  "[R]equiring a claimant to produce additional evidence" beyond what Rule 3001 requires because it would be required in a state-court lawsuit "directly undermines Rule 3001," and the "streamlined and summary procedures" the Bankruptcy Code provides for claims-allowance.  *Id.* at 547.

Other cases are in accord.  *Lasky*, 364 B.R. 385, for instance, also rejected an argument virtually identical to Debtors' argument here.  The debtors there argued that a creditor's claim was unenforceable under applicable law pursuant to § 502(b)(1) when the creditor failed to comply with California's requirement that a party suing in state court to collect on an account "deliver to the adverse party, within ten days after a demand thereof in writing, a copy of the account[.]"  *Id.* at 388 (quoting Cal. Code Civ. Proc. § 454).  The court held that the California statute was not "applicable law" under § 502(b)(1) because "state law procedural

requirements relating to state law enforcement of debts in state court are not incorporated into the proof of claim process in bankruptcy court." *Id.* As the court explained: "State law procedural requirements do not determine whether a claim exists for purposes of nonbankruptcy law…. Rather, they determine how claims may be asserted in state courts. Congress has established different procedures for claims in the bankruptcy court." *Id.*

Similarly, in *Crutchfield*, the debtor objected to claims for credit-card debt that were prima facie valid under Rule 3001, arguing that the claims were unenforceable under applicable law pursuant to § 502(b)(1) because the creditors had not provided documentation showing that the debts had been assigned to them as required by Georgia law. 492 B.R. at 65. The court overruled the objection, reasoning that "the enforceability of a claim for purposes of § 502(b)(1) refers to the nature of the claim"—i.e., to its validity under substantive state law—"not to sufficiency of proof." *Id.* at 76. The court noted that the legislative history of § 502(b)(1) identifies multiple examples of "unenforceable" claims—including claims that are unenforceable due to "usury, unconscionability, or failure of consideration"—all of which would be unenforceable under substantive state law. *Id.* (citing H.R. Rep. No. 95-595, at 353-355 (1977); 124 Cong. Rec. H11093, H11095, H11110 (daily ed. Sept. 28, 1978)). None of the examples,

however, included claims that failed to satisfy the state-law documentation requirements for an action in state court. *Id.*

Likewise, in *In re Gorman*, 495 B.R. 823 (Bankr. E.D. Tenn. 2013), the debtor argued that a claim for credit-card debt "should be disallowed under § 502(b)(1)" because it would be unenforceable in Tennessee state court due to the creditor's failure to provide evidence of the assignment of the debt as required under Tennessee rules. *Id*. at 824-825, 835. The court rejected that argument, explaining:

> [A] valid objection [to a claim] cannot be based solely on a failure to attach documents *even if state law imposes such a burden of proof [i.e., burden of production] on a creditor....* In the bankruptcy context, the debtor must also allege that either the debtor does not owe the debt or that the debtor does not owe the [c]laimant because he or she owes another creditor.

*Id.* at 836 (emphasis added). While "[r]equiring the debtor to make such an allegation … is a burden that the debtor might not have in a state court collection action," "a requirement to dispute the facts in the proof of claim is imposed on the debtor in bankruptcy proceeding[s] as part of the abbreviated claims resolution process." *Id.*; *see also, e.g.*, *In re Chalakee*, 385 B.R. 771, 777, 781-782 (Bankr. N.D. Okla. 2008) (holding that "[d]ebtors may not raise the specter of § 502(b)(1) to avoid paying debts that they cannot in good faith disavow" where debtors objected solely on the basis that claims were unenforceable under Oklahoma law for lack of documentation).

46

The reasoning of these cases applies fully here. The Nevada statutes' evidentiary requirements do not relate to the validity of LVNV's claim under substantive state law, but only to the documentation a creditor must submit to pursue an action on credit-card debt in state court. Accordingly, the Nevada statutes do not constitute "applicable law" that can render a claim "unenforceable" under § 502(b)(1). By requiring LVNV to produce additional evidence beyond what Rule 3001 requires, the BAP improperly imported state procedural rules into the federal bankruptcy forum, in contravention of the Bankruptcy Code and Rules, as well as *Erie* principles.

### 2. The Nevada statutes are not "applicable law" by their own terms

In addition, the Nevada statutes on which the BAP relied are not "applicable law" by their own terms. Nevada Rev. Stat. § 97A.160(1) applies only to "any action brought to collect a debt owed to an issuer" and § 97A.165 applies only to "an action brought to collect a credit card debt owed to a purchaser of credit card debt."

As several courts have held, filing a proof of claim does not commence an action to collect credit-card debt. For example, in *In re Nussman*, 501 B.R. 297 (Bankr. E.D.N.C. 2013), the court considered whether a North Carolina statute that required specific documentation to be attached to a complaint "in any cause of action initiated by a debt buyer" was "applicable law" for the purposes of

47

§ 502(b)(1). *Id*. at 301-302 (citing N.C. Gen. Stat. § 58-70-150). The court

concluded that the statute was not "applicable law," in part because the North

Carolina statute was aimed at lawsuits to collect a debt, and filing a proof of claim

is not such an action. *Id*. at 302-303. It reasoned:

> If filing a proof of claim constituted a "collection" activity, then filing
> proofs of claim under § 502(b) would be fundamentally at odds with
> language in § 362(a)(6) providing that the filing of a petition
> "operates as a stay, applicable to all entities, of ... any act
> to *collect,* assess, or recover a claim against the debtor that arose
> before the commencement of the case under this title."

*Id*.

Other courts have reached the same conclusion. *See In re Skerlak*, 2014 WL

1153972, at *3 (Bankr. M.D.N.C. Mar. 20, 2014) (filing a proof of claim is simply

"a request to participate in the distribution of the bankruptcy estate under court

control," not an effort to collect a debt against a consumer debtor as defined in

state statute); *In re Cleveland*, 396 B.R. 83, 98 (Bankr. N.D. Okla. 2008) (filing a

proof of claim was neither a "direct collection of payments from" nor

"'enforcement of rights against'" the debtors under state law).

So, too, several courts have held that provisions of the federal Fair Debt

Collection Practices Act ("FDCPA") governing actions to collect a debt are

inapplicable to proofs of claim. As the Supreme Court has explained, there is a

difference between an "ordinary civil action to collect a debt" and a bankruptcy

case, "[where] [p]rocedural … rules more directly guide the evaluation of claims"

48

and "[where] the claims resolution process is 'generally a more streamlined and less unnerving prospect for a debtor than facing a collection lawsuit.'" *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 231-232 (2017); *see also In re McMillen*, 440 B.R. 907, 912 (Bankr. N.D. Ga. 2010) ("filing a proof of claim in bankruptcy cannot be the basis for an FDCPA claim, because it is not an activity against a consumer debtor[,]" who is protected by the automatic stay, but is instead a "request to participate in the … bankruptcy estate"); *In re Jenkins*, 456 B.R. 236, 240 (Bankr. E.D.N.C. 2011) (stating the same, as to both the FDCPA and state debt collection statutes); *In re Chaussee*, 399 B.R. 225, 244 (B.A.P. 9th Cir. 2008) (Jury, J., concurring).

Indeed, the filing of neither a proof of claim, nor an objection thereto, commences an "action," let alone one to "collect a debt." The Bankruptcy Rules include specific provisions for so-called "adversary proceedings," lawsuits that are part of a debtor's bankruptcy case and are, as with other "actions," commenced by filing a complaint. *See* Fed. R. Bank. P. 7001-7087. But, as discussed, a creditor need not file a complaint to assert a claim to share in the bankruptcy estate; it must simply file a proof of claim. And an objection to such a claim likewise does not commence an adversary proceeding (unless accompanied by a request for affirmative relief, in which case the objecting party must file a complaint); it simply creates a "contested matter," a truncated proceeding in which only a small

subset of the Bankruptcy Rules that govern adversary proceedings usually apply. *See* Fed. R. Bankr. P. 3007 Committee Note ("The contested matter initiated by an objection to a claim is governed by rule 9014."); *id.* 9014(c).

*****

Because the Nevada statutes are not "applicable law" by their own terms—and because they are procedural rules that cannot be "applicable law" that could render a claim "unenforceable" under § 502(b)(1)—they do not provide a basis for disallowance of LVNV's claim in bankruptcy court. For this reason, too, the BAP Decision and Disallowance Order must be reversed.

## II. IN ANY EVENT, LVNV PROVIDED ALL THE EVIDENCE THAT WOULD HAVE BEEN REQUIRED UNDER NEVADA LAW TO SUPPORT ITS CLAIM IN STATE COURT

While the Court need not reach this issue if it accepts LVNV's arguments in Part I, even if the Nevada statutes were applicable law such that non-compliance could render LVNV's claim unenforceable under § 502(b)(1), LVNV complied with Nevada law.

Nevada Rev. Stat. § 97A.165 provides that no judgment shall be entered in favor of a debt purchaser unless it has "satisfied the standards of proof" in Nevada Rev. Stat. § 97A.160. In turn, § 97A.160 provides that an issuer "*may*" establish contractual liability by submitting either the cardholder's credit card application "or evidence that the cardholder incurred charges on the account and made

50

payments thereon," if the contents of such records are authenticated pursuant to either the Nevada Rules of Evidence or the specified alternative authentication procedure.  Nev. Rev. Stat. § 97A.160 (emphasis added).

Although LVNV provided billing statements showing the amount Debtors owed, and the terms and conditions of the credit-card agreement (in addition to all the information required by Bankruptcy Rule 3001), the BAP determined that the documentation LVNV provided was insufficient because "there was no evidence of any of the charges making up the beginning balance [on the first billing statement provided] or who made them."  ER-76.  The BAP thus read § 97A.160 to require a creditor to submit *all* billing statements for the account reflecting *any* of the charges that form part of the claimed debt.  The statute contains no such requirement.

As demonstrated by the word "may," the Nevada statutes do not *require* a plaintiff to submit the evidence specified in § 97A.160; rather, they merely *permit* a plaintiff to submit that evidence.  *See In re Barnes*, 2022 WL 4073309, at *3 (Bankr. D. Nev. Sept. 2, 2022) ("The use of the word 'may' indicates that the means to prove liability and the amount of debt under [Nevada Rev. Stat. §] 97A.160 are permissive and inclusive rather than mandatory and exclusive."); *see also, e.g.*, *State v. American Bankers Ins. Co.*, 802 P.2d 1276, 1278 (Nev. 1990) (per curiam) ("In construing statutes, 'shall' is presumptively mandatory and 'may'

is construed as permissive unless legislative intent demands another construction.").

The plaintiff in an action in Nevada can establish its claim through proof other than the documents specified in § 97A.160. A bench book created for Nevada state judges makes this clear. It states that "[a]lthough these two methods of proof"—*i.e.*, submitting the authenticated written application for a credit card account or submitting authenticated evidence that the cardholder incurred charges on the account and made payments thereon—"are legislatively authorized, the plaintiff may still rely upon traditional methods of proof, such as admissions by the party opponent in pleadings or matters deemed admitted by virtue of failure to respond to discovery." Nevada Judges of Limited Jurisdiction, *Limited Jurisdiction Bench Book* 28 (rev. ed. 2019).[9]

Similarly, Nevada Rev. Stat. § 97A.160(1)(b) provides that the claimant may establish the debt owed to it by introducing "periodic billing statements" or

---

[9] This interpretation is further supported by the Nevada Rules of Evidence, which provide that the Rules "govern[] proceedings in the courts of this State and before magistrates, *except…[t]o the extent to which its provisions are relaxed by a statute or procedural rule applicable to the specific situation*." Nev. Rev. Stat. § 47.020(a) (emphasis added). As noted, Nevada Rev. Stat. § 97A.160(a) states that liability and the amount of debt can be established by the specified methods "[n]otwithstanding the provisions" of the Nevada Rules of Evidence. Taken together, these statutes signify that the standards for establishing liability for credit-card debt under § 97A.160(a) are "relaxed" as compared to the Nevada Rules of Evidence.

"information stored by the issuer on a computer, microfilm, microfiche or optical disc which indicate the amount of the debt owed."  There is no requirement that the claimant submit *all* billing statements or any other specific kind of digital information, as long as the documentation the claimant does provide shows "the amount of the debt."  Moreover, it does not matter that the billing statements LVNV submitted with its proof of claim may not have shown who, in particular, made the charges that constituted the "beginning balance" for the amount owed. Nevada law provides that a "cardholder is personally liable for all charges incurred on his or her credit card account by … the cardholder or authorized user" as well as any other charges on the card, except for those that are fraudulent.  *See* Nev. Rev. Stat. § 97A.150.  Here, the Debtors never asserted that any of the charges shown in the billing statements they received and that were included with LVNV's proof of claim were fraudulent or unauthorized.

In short, LVNV provided the necessary documentation to prove its claim under Nevada law.  The BAP misread the Nevada statutes in holding that LVNV's failure to provide *all* billing statements, with authentication, making up the "beginning balance," would have defeated its claim even if LVNV had brought a collection action in state court.

## CONCLUSION

For the reasons set out above, this Court should reverse the BAP Decision, reverse the Disallowance Order, and remand to the Bankruptcy Court with instructions to enter an order allowing LVNV's claim.

January 27, 2023                                   Respectfully submitted,

                                                   */s/* Philip D. Anker
                                                   PHILIP D. ANKER
                                                   ALLYSON PIERCE
                                                   WILMER CUTLER PICKERING
                                                       HALE AND DORR LLP
                                                   250 Greenwich Street
                                                   New York, NY  10007
                                                   (212) 230-8800
                                                   philip.anker@wilmerhale.com

                                                   ISLEY M. GOSTIN
                                                   WILMER CUTLER PICKERING
                                                       HALE AND DORR LLP
                                                   1875 Pennsylvania Avenue N.W.
                                                   Washington, D.C.  20006
                                                   (202) 663-6000
                                                   isley.gostin@wilmerhale.com

                                                   EDDIE R. JIMENEZ
                                                   ALDRIDGE PITE, LLP
                                                   7220 South Cimarron Road
                                                   Suite 140
                                                   Las Vegas, NV  89113
                                                   (858) 750-7600

                                                   *Counsel for Appellant LVNV Funding, LLC*

## <u>STATEMENT OF RELATED CASES</u>

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number(s)**    22-16615, 22-60037

The undersigned attorney or self-represented party states the following:

[X] I am not aware of any related cases currently pending in this court.

**Signature**   */s/* Philip D. Anker                **Date**   January 27, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-16615, 22-60037

I am the attorney or self-represented party.

**This brief contains** <u>12,903</u> **words,** including <u>0</u> words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _/s/ Philip D. Anker_____ **Date** _January 27, 2023_____
*(use "s/[typed name]" to sign electronically-filed documents)*

**ADDENDUM**

**ADDENDUM**
**TABLE OF CONTENTS**

Page

11 U.S.C. § 502 ................................................................................. Add.1

Nevada Revised Statute 97A.160 ..................................................... Add.5

Nevada Revised Statute 97A.165 ..................................................... Add.6

Federal Rule of Bankruptcy Procedure 3001 ................................... Add.7

i

Pursuant to Fed. R. App. P 28(f) and 9th Cir. Rule 28-2.7, legal provisions pertinent to this appeal are set forth verbatim below.

## 11 U.S.C. § 502

### §502. Allowance of claims or interests

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) or under the Federal Rules of Bankruptcy Procedure, except that—

(A) a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide; and

(B) in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required.

(c) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

Add.2

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

(e)(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—

(A) such creditor's claim against the estate is disallowed;

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or

(C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

(2) A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

(f) In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(g)(1) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(2) A claim for damages calculated in accordance with section 562 shall be allowed under subsection (a), (b), or (c), or disallowed under subsection (d) or (e), as if such claim had arisen before the date of the filing of the petition.

(h) A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(i) A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(j) A claim that has been allowed or disallowed may be reconsidered for cause.  A reconsidered claim may be allowed or disallowed according to the equities of the case.  Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder.  This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

(k)(1) The court, on the motion of the debtor and after a hearing, may reduce a claim filed under this section based in whole on an unsecured consumer debt by not more than 20 percent of the claim, if—

(A) the claim was filed by a creditor who unreasonably refused to negotiate a reasonable alternative repayment schedule proposed on behalf of the debtor by an approved nonprofit budget and credit counseling agency described in section 111;

(B) the offer of the debtor under subparagraph (A)—

(i) was made at least 60 days before the date of the filing of the petition; and

(ii) provided for payment of at least 60 percent of the amount of the debt over a period not to exceed the repayment period of the loan, or a reasonable extension thereof; and

Add.4

(C) no part of the debt under the alternative repayment schedule is nondischargeable.

(2) The debtor shall have the burden of proving, by clear and convincing evidence, that—

(A) the creditor unreasonably refused to consider the debtor's proposal; and

(B) the proposed alternative repayment schedule was made prior to expiration of the 60-day period specified in paragraph (1)(B)(i).

## NEVADA REVISED STATUTES 97A.160

**NRS  97A.160    Records required in action to collect debt: Establishment of liability and amount; authentication; retention.**

1.  Notwithstanding the provisions of chapter 52 of NRS, in any action brought to collect a debt owed to an issuer:

(a) The issuer may establish that the cardholder is contractually liable for the debt owed by submitting the written application for a credit card account submitted to the issuer by the cardholder or evidence that the cardholder incurred charges on the account and made payments thereon.

(b) The amount owed may be established by photocopies of:

(1) The periodic billing statements provided by the issuer; or

(2) Information stored by the issuer on a computer, microfilm, microfiche or optical disc which indicate the amount of the debt owed.

2.  The content of such records must be authenticated:

(a) Pursuant to the procedures set forth in NRS 52.450 to 52.480, inclusive; or

(b) By the submission of a written affidavit sufficient to establish:

(1) The affiant as the custodian of the written records offered as evidence;

(2) That the written records offered as evidence were made in the ordinary course of the issuer's business; and

(3) That the written records are true and correct copies of the records retained by the issuer.

3. The liability of a person other than the cardholder for the amount of any debt owed to an issuer may be established by evidence indicating that the person caused the charge to be incurred on the credit card account.

4. An issuer shall retain any record necessary to establish the existence and amount of any debt owed to the issuer for at least 24 months after the record is first published, issued or filed.

## NEVADA REVISED STATUTES 97A.165

**NRS  97A.165    Contents of complaint; limitations.**

1. In an action brought to collect a credit card debt owed to a purchaser of credit card debt:

(a) The complaint must include, without limitation:

(1) The name of the issuer;

(2) The last four digits of the account number originally assigned by the issuer;

(3) All subsequent account numbers assigned to the credit card debt by all assignees of the credit card debt; and

(4) The date of the default on the credit card debt.

(b) No judgment in favor of the purchaser of credit card debt, including, without limitation, a default judgment, may be entered unless:

(1) The complaint includes the information required by paragraph (a) of subsection 1; and

(2) The purchaser of credit card debt has satisfied the standards of proof set forth in subsections 1 and 2 of NRS 97A.160.

2. As used in this section, "purchaser of credit card debt" means a person, other than a financial institution, that purchases any outstanding credit card debt.

## FEDERAL RULE OF BANKRUPTCY PROCEDURE 3001

**Rule 3001. Proof of Claim**

(a) **Form and Content**. A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

(b) **Who May Execute**. A proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004 and 3005.

(c) **Supporting Information.**

(1) *Claim Based on a Writing*. Except for a claim governed by paragraph (3) of this subdivision, when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

(2) *Additional Requirements in an Individual Debtor Case; Sanctions for Failure to Comply*. In a case in which the debtor is an individual:

(A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

(B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.

(C) If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim. If an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim.

(D) If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:

(i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

(3) *Claim Based on an Open-End or Revolving Consumer Credit Agreement.*

(A) When a claim is based on an open-end or revolving consumer credit agreement — except one for which a security interest is claimed in the debtor's real property — a statement shall be filed with the proof of claim, including all of the following information that applies to the account:

(i) the name of the entity from whom the creditor purchased the account;

(ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;

(iii) the date of an account holder's last transaction;

(iv) the date of the last payment on the account; and

(v) the date on which the account was charged to profit and loss.

(B) On written request by a party in interest, the holder of a claim based on an open-end or revolving consumer credit agreement shall, within 30 days after the request is sent, provide the requesting party a copy of the writing specified in paragraph (1) of this subdivision.

Add.8

(d) **Evidence of Perfection of Security Interest**.  If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected.

(e) **Transferred Claim**.

(1) *Transfer of Claim Other Than for Security Before Proof Filed*.  If a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee.

(2) *Transfer of Claim Other than for Security after Proof Filed*.  If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee.  The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 21 days of the mailing of the notice or within any additional time allowed by the court.  If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor.  If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

(3) *Transfer of Claim for Security Before Proof Filed*.  If a claim other than one based on a publicly traded note, bond, or debenture has been transferred for security before proof of the claim has been filed, the transferor or transferee or both may file a proof of claim for the full amount. The proof shall be supported by a statement setting forth the terms of the transfer.  If either the transferor or the transferee files a proof of claim, the clerk shall immediately notify the other by mail of the right to join in the filed claim.  If both transferor and transferee file proofs of the same claim, the proofs shall be consolidated.  If the transferor or transferee does not file an agreement regarding its relative rights respecting voting of the claim, payment of dividends thereon, or participation in the administration of the estate, on motion by a party in interest and after notice and a hearing, the court shall enter such orders respecting these matters as may be appropriate.

(4) *Transfer of Claim for Security after Proof Filed*.  If a claim other than one based on a publicly traded note, bond, or debenture has been transferred for security after the proof of claim has been filed, evidence of the terms of the transfer shall be filed by the transferee.  The clerk shall immediately notify the alleged transferor by mail of the filing of the

Add.9

evidence of transfer and that objection thereto, if any, must be filed within 21 days of the mailing of the notice or within any additional time allowed by the court. If a timely objection is filed by the alleged transferor, the court, after notice and a hearing, shall determine whether the claim has been transferred for security. If the transferor or transferee does not file an agreement regarding its relative rights respecting voting of the claim, payment of dividends thereon, or participation in the administration of the estate, on motion by a party in interest and after notice and a hearing, the court shall enter such orders respecting these matters as may be appropriate.

(5) *Service of Objection or Motion; Notice of Hearing*. A copy of an objection filed pursuant to paragraph (2) or (4) or a motion filed pursuant to paragraph (3) or (4) of this subdivision together with a notice of a hearing shall be mailed or otherwise delivered to the transferor or transferee, whichever is appropriate, at least 30 days prior to the hearing.

(f) **Evidentiary Effect**. A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

(g) To the extent not inconsistent with the United States Warehouse Act or applicable State law, a warehouse receipt, scale ticket, or similar document of the type routinely issued as evidence of title by a grain storage facility, as defined in section 557 of title 11, shall constitute prima facie evidence of the validity and amount of a claim of ownership of a quantity of grain.

## CERTIFICATE OF SERVICE

### Form 15. Certificate of Service for Electronic Filing

**9th Cir. Case Number(s)**  22-16615, 22-60037

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[**X**] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)***:**

Brief of Appellant LVNV Funding, LLC

**Signature**  */s/* Philip D. Anker          **Date**  January 27, 2023