# Nos. 22-16615, 22-60037

# United States Court of Appeals for the Ninth Circuit

IN RE:

DAVID EDWARDS MYERS & MARY ANN MYERS,

*Debtors.*

LVNV FUNDING, LLC,

*Appellant*,

*v.*

DAVID EDWARDS MYERS & MARY ANN MYERS,

*Appellees.*

CASE NO. 22-16615, ON DIRECT APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA (CHAPTER 13 CASE NO. 21-11376, HON. NATALIE M. COX)

CASE NO. 22-60037, ON APPEAL FROM THE BANKRUPTCY APPELLATE PANEL FOR THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT (CASE NO. 22-1005)

## REPLY BRIEF OF APPELLANT LVNV FUNDING, LLC

ISLEY M. GOSTIN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
isley.gostin@wilmerhale.com

EDDIE R. JIMENEZ
ALDRIDGE PITE, LLP
7220 South Cimarron Road
Suite 140
Las Vegas, NV 89113
(858) 750-7600

PHILIP D. ANKER
ALLYSON PIERCE
WILMER CUTLER PICKERING
  HALE AND DORR LLP
250 Greenwich Street
New York, NY 10007
(212) 230-8800
philip.anker@wilmerhale.com

*Counsel for Appellant LVNV Funding, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION .................................................................................. 1

ARGUMENT ......................................................................................... 3

I.  THIS COURT CAN AND SHOULD REACH THE MERITS OF THE
    ISSUES ON APPEAL ...................................................................... 3

II. FEDERAL, NOT STATE, LAW GOVERNS THE DOCUMENTATION A
    CREDITOR MUST PROVIDE IN SUPPORT OF A PROOF OF CLAIM,
    AND THE DEBTORS DID NOT PRESENT ANY EVIDENCE, AS THEY
    WERE REQUIRED TO DO UNDER THE BANKRUPTCY RULES, TO
    REBUT THE PRIMA FACIE VALIDITY OF LVNV'S PROOF OF
    CLAIM ........................................................................................ 11

    A.  Bankruptcy Rule 3001, Not Nev. Rev. Stat. § 97A.160,
        Governs the Procedures for Proving Up and Defending
        Against a Claim for Credit Card Debt in Federal
        Bankruptcy Court .................................................................. 13

    B.  The Debtors Presented No Evidence To Rebut the Prima
        Facie Validity of LVNV's Proof of Claim ............................. 17

III. ALTERNATIVELY, LVNV PROVIDED ALL THE EVIDENCE THAT
     WOULD HAVE BEEN REQUIRED UNDER NEVADA LAW TO
     SUPPORT ITS CLAIM IN STATE COURT ......................................... 23

CONCLUSION ...................................................................................... 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Abex Corp. v. Ski's Enterprises, Inc.,* 748 F.2d 513 (9th Cir.1984) ......................... 8

*Asgrow Seed Co. v. Winterboer*, 513 U.S. 179 (1995) ............................................ 21

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ........................................... 5, 11

*FDIC v. Meyer*, 510 U.S. 471 (1994) ....................................................................... 21

*Hanna v. Plummer*, 380 U.S. 460 (1965) ............................................................. 5, 14

*In re Allegheny Internatoinal, Inc.*, 954 F.2d 167 (3d Cir. 1992) .......................... 20

*In re America West Airlines, Inc.*, 217 F.3d 1161 (9th Cir. 2000) ....................... 6, 7

*In re Barnes*, 2022 WL 4073309 (Bankr. D. Nev. Sept. 2, 2022) .......................... 24

*In re Barnes*, 266 B.R. 397 (B.A.P. 8th Cir. 2001) ................................................. 16

*In re Campbell*, 336 B.R. 430 (B.A.P. 9th Cir. 2005) ............................................. 18

*In re Chu*, No. 2008 WL 8444805 (B.A.P. 9th Cir.
    Mar. 18, 2008) ............................................................................................... 16

*In re Crutchfield*, 492 B.R. 60 (Bankr. M.D. Ga. 2013) ......................................... 18

*In re Davenport*, 544 B.R. 245 (Bankr. D.D.C. 2015) ........................................... 16

*In re Friedman*, 184 B.R. 883 (Bankr. N.D.N.Y. 1994) ......................................... 20

*In re Heath*, 331 B.R. 424 (B.A.P. 9th Cir. 2005) .................................................. 18

*In re Holm*, 931 F.2d 620 (9th Cir. 1991) ............................................................... 20

*In re Jones*, 420 B.R. 506 (B.A.P. 9th Cir. 2009) ................................................... 22

*In re Lane*, 589 B.R. 399 (B.A.P. 9th Cir. 2018) ...................................................... 7

ii

*In re Live Primary, LLC*, 626 B.R. 171 (Bankr. S.D.N.Y. 2021)..............................9

*In re Rodeo Canon Development Corp.*,
    2005 WL 6960188 (B.A.P. 9th Cir. Aug. 5, 2005) ........................................6

*In re Roman Catholic Archbishop of Portland*, 661 F.3d 417
    (9th Cir. 2011) ........................................................................................7

*In re Shank*, 315 B.R. 799 (Bankr. N.D. Ga. 2004)........................................9

*In re Shook*, 278 B.R. 815 (B.A.P. 9th Cir. 2002)....................................20

*In re Simmons*, 765 F.2d 547 (5th Cir. 1985) ...........................................20

*In re Walston*, 606 F. App'x 543 (11th Cir. 2015) .......................................9, 16, 23

*Katchen v. Landy*, 382 U.S. 323 (1966)........................................................9

*Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995) .....................5

*Martin v. Pierce County*, 34 F.4th 1125 (9th Cir. 2022) .........................................17

*Momox-Caselis v. Donohue*, 987 F.3d 835 (9th Cir. 2021)......................................6

*Stewart v. U.S. Bancorp*, 297 F.3d 953 (9th Cir. 2002)............................................7

*Telco Leasing, Inc. v. Transwestern Title Co.*, 630 F.2d 691 (9th Cir.
    1980) ....................................................................................................6

*Thompson v. Runnels*, 705 F.3d 1089 (9th Cir. 2013)..............................................5

*Travelers Casualty & Surety of America v. Pacific Gas & Electric
    Co.*, 549 U.S. 443 (2007)...................................................................11

## STATUTES AND RULES

11 U.S.C.
    § 502 ..............................................................................................11, 19
    § 521 ......................................................................................................19
    § 523 ......................................................................................................19

28 U.S.C. § 2072...............................................................................................11

iii

Nev. Rev. Stat.

    § 97A.150 ...................................................................................15

    § 97A.160 ............................................................................*passim*

    § 97A.165 ...................................................................................24

Fed. R. Bankr. P.

    Rules 1001-9037 ........................................................................11

    Rule 1007 ...................................................................................19

    Rules 3001-3007 ........................................................................11

    Rule 3001 .............................................................................*passim*

    Rule 3001 Committee Notes—2011 Amendment I .....................18

    Rule 3001 Committee Notes—2011 Amendment II ...................10

    Rule 3003 ...................................................................................16

## OTHER AUTHORITIES

Federal Reserve Bank of New York, *Center for Microeconomic Data:*
    *Household Debt and Credit Report (Q1 2023)*,
    https://www.newyorkfed.org/microeconomics/hhdc ...................10

IBISWorld, *Credit Card Issuing in the US – Market Size 2005–2029*
    (Jan. 27, 2023), https://www.ibisworld.com/industry-
    statistics/market-size/credit-card-issuing-united-states/..............10

Merriam-Webster Dictionary, https://www.merriam-
    webster.com/dictionary (visited May 18, 2023)...........................21

## INTRODUCTION

The Debtors' answering brief only shows why this Court should reverse the decision of the Bankruptcy Appellate Panel (the "BAP") and the order of the Bankruptcy Court on remand. The Debtors acknowledge that the BAP Decision and the Bankruptcy Court's Disallowance Order are final and that, accordingly, this Court has appellate jurisdiction. Myers Br. 1-4. The Debtors also acknowledge that the decision and order below turned on issues of law, not fact, and that therefore this Court reviews that decision and order de novo. Myers Br. 5.

All of that is right. But when they discuss the rules of law that control this appeal, the Debtors get it all wrong.

Hoping to avoid the merits of the issues presented on appeal, the Debtors contend that LVNV did not make the argument below that it presses on appeal and that therefore this Court cannot consider the point. But, in fact, LVNV made the same argument both to the Bankruptcy Court and to the BAP that it is making now: that federal bankruptcy law, not Nevada state law, governed the process for litigating any dispute over LVNV's proof of claim in these federal bankruptcy proceedings; that LVNV provided all the information and documentation that Bankruptcy Rules required to establish the prima facie validity of that claim; and that the Debtors failed to present any evidence to rebut that claim, as they were

1

required to do under the Bankruptcy Rules.  In any event, even if LVNV was making a new argument, the Debtors acknowledge that this appeal presents a pure question of law and this Court routinely considers legal issues newly raised on appeal, especially where, as here, those issues are of considerable importance not just to the parties, but to the public.

The Debtors' arguments on the merits are equally unpersuasive.  They claim that the Nevada statutory provisions on which they rely are substantive, not procedural, because they provide important "protection" to card-holders facing collection actions (Myers Br. 19) and therefore those provisions were properly applied by the BAP.  But all legal rules are important (or at least considered so by their drafters), and those that govern the procedures for proving up a claim, like the Nevada statutes and the contrary federal bankruptcy rules, are, by definition, procedural, not substantive.  The Debtors' alternative argument that, even if the federal bankruptcy rules controlled, LVNV failed to provide the proof required under those rules for a proof of claim is contrary to the words the drafters chose and to the holdings in case after case from this and other Circuits.

This Court should reverse and remand with instructions that LVNV's claim be allowed, as the Bankruptcy Court originally held it should be.

# ARGUMENT

## I. THIS COURT CAN AND SHOULD REACH THE MERITS OF THE ISSUES ON APPEAL

In an effort to deflect attention from the weakness in their positions on the merits, the Debtors suggest that this Court should not reach the issues presented. They argue that LVNV "failed to raise … in the lower courts" what the Debtors term the "*Erie* doctrine arguments" that LVNV is pressing on appeal. Myers Br. 18-19. That is simply untrue.

The so-called "*Erie* doctrine arguments" boil down to very same basic proposition that LVNV made as its central contention in the courts below: that the Debtors' bankruptcy proceedings were in federal, not state, court; that, therefore, the Federal Rules of Bankruptcy Procedure determined the supporting documentation LVNV had to provide with its proof of claim; that it provided all the information those Rules required for the claim to "constitute prima facie evidence of the validity and amount of the claim," Fed. R. Bankr. P. 3001(f); and that the Debtors failed to present any contrary evidence as the Rules required them to do in order to rebut the claim. Indeed, the Debtors all but admit that this was the core of LVNV's arguments in the courts below. In the Debtors' own words, in the proceedings before the lower courts, "LVNV emphasized (1) its compliance with

3

[Bankruptcy] Rule 3001, (2) that it forwarded evidence sufficient to establish its entitlement to enforce its claim, (3) that it established a presumptively valid claim, and (4) that the Myers did not deny liability for the claim." Myers Br. 14-15.

That admission is understandable. The record is replete with LVNV's repeated assertion, both in Bankruptcy Court and before the BAP, that it had abided by the requirements set forth in Bankruptcy Rule 3001 for the allowance of its claim, and that its alleged failure also to provide the additional documentation that the Debtors argued would be required in a collection action in state court under Nevada law did not matter because this was a federal-court bankruptcy proceeding, not a state-court collection action. The following are just a few examples:

> ER-102. "Debtors' contention that LVNV failed to comply with the requirements of NRS 97A.160(1)(a) is little more than a red-herring." (LVNV Brief before the BAP).

> ER-101. "LVNV's Amended Claim … included a statement providing all of the information required by Rule 3001(c)(3)(A). Accordingly, LVNV's Amended Claim constitutes prima facie evidence of the validity and amount of the claim and Debtors were required to submit sufficient evidence to negate one or more of the sworn facts in the proof of claim. As provided herein, Debtors[] failed to submit any admissible evidence in support of their Claim Objection whatsoever." (same).

> ER-133-134. "The Proof of Claim includes … all of the information required by FRBP 3001(c)(3). As a result …, LVNV's Claim constitutes prima facie evidence of the validity and amount of the claim. To overcome the presumption, [the Debtors] must provide

4

sufficient evidence to create triable issues of fact… . Debtors have provided no evidence… . Debtors' Claim Objection thus fails and must be overruled." (LVNV's Brief in Bankruptcy Court).[1]

To be sure, LVNV did not cite *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) or, for that matter, *Hanna v. Plummer*, 380 U.S. 460 (1965), when it made this argument below. But the Debtors do not cite any case, and LVNV is unaware of one, holding that a party on appeal cannot cite additional legal authority in support of the same argument it made below. To the contrary, parties on appeal are "not limited to the precise arguments they made below," and appellate courts routinely consider even an entirely "new argument" made on appeal "to support what has been [the party's] consistent claim." *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995); *see also Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) (new legal arguments relating to previously raised claims may

---

[1] Without any citation to the record, the Debtors argue in passing that LVNV "conceded that NRS 97A.160 was applicable" in the proceedings below. Myers Br. 18. That is, of course, untrue, as the citations to the record in the text of this brief evidence. What is true is that LVNV argued below, as it also does on this appeal, in the alternative that, even if the documentary requirements in a collection action in Nevada state court applied in the Debtors' federal bankruptcy proceeding concerning LVNV's proof of claim, LVNV had submitted all the documentation Nevada law would require. *See* ER-131-132; LVNV's Opening Br. 50-53 & *infra* § III.

5

be considered). If a party can raise a "new argument" on appeal to support its basic claim, it surely can cite additional case law in support of the same argument.

In any event, even if LVNV had not raised the same point below, this Court could still properly consider it, since this appeal presents "a pure question of law." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841-842 (9th Cir. 2021); *see also In re America W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000) (an issue raised for the first time on appeal may nonetheless be decided "when the issue is one of law and … does not depend on the factual record"); *In re Rodeo Canon Dev. Corp.*, 2005 WL 6960188, at *9 (B.A.P. 9th Cir. Aug. 5, 2005) ("[W]e are not confined to the arguments of parties on legal issues, … and the issues presented here are purely legal[.]"). As the Debtors concede, whether the Federal Rules of Bankruptcy Procedure govern the procedures in federal bankruptcy court for proving and objecting to a creditor's proof of claim is a question of law, not fact. *See* Myers Br. 5 ("The applicable standard of review is based on the lower courts' statutory interpretation."); *see also Telco Leasing, Inc. v. Transwestern Title Co.*, 630 F.2d 691, 693 (9th Cir. 1980) (considering for first time on appeal argument that the law of Illinois, rather than California, governed attorney's fee award and explaining that the "issue of attorney's fees presented by this case falls squarely within that limited category wherein the determination to be made is solely one of law").

Nor would this Court's consideration of the legal questions presented by this appeal cause the Debtors any prejudice. In its opening brief in this appeal, LVNV argued why federal, not state, law set the applicable requirements for LVNV to present, and for the Debtors to object, to LVNV's proof of claim. The Debtors had a full opportunity to respond in their answering brief, and they indeed did so, briefing the issues of law presented on appeal, thus obviating any possible prejudice. *See In re Roman Cath. Archbishop of Portland*, 661 F.3d 417, 429 (9th Cir. 2011) (considering a new argument raised by the appellant on appeal because it was "a matter of statutory construction," and the appellees were able to brief the issue "and thus, will suffer no prejudice"); *America W. Airlines*, 217 F.3d at 1165 (an issue raised for the first time on appeal may nonetheless be decided "when the issue is one of law and … does not depend on the factual record").

Finally, this Court has been especially inclined to consider a new issue of law on appeal where, as here, the issue is important—both for the parties and to the public at large. *See In re Lane*, 589 B.R. 399, 406-407 (B.A.P. 9th Cir. 2018) (considering issue because it was an implicit premise of bankruptcy court's ruling and "an important issue of law"), *aff'd*, 959 F.3d 1226 (9th Cir. 2020); *see also Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 n.1 (9th Cir. 2002) (explaining that this Court may consider an issue on appeal "when the question is a purely legal one

7

that is both central to the case and important to the public") (quoting *Abex Corp. v. Ski's Enters. Inc.,* 748 F.2d 513, 516 (9th Cir.1984)).

Here, the question whether federal or state law determined the documentation that LVNV had to provide with its proof of claim for that claim to be prima facie valid, and the showing the Debtors had to make in their objection to overcome that prima facie showing, is potentially dispositive of this appeal and thus of obvious importance to the parties. But this appeal raises issues of far greater importance than simply whether LVNV will have a claim of some $7,900 allowed in one bankruptcy case against one debtor. Rather, the appeal raises fundamental legal questions that have implications for the administration of the hundreds of thousands of consumer bankruptcy cases filed every year around the nation (*see* LVNV Opening Br. 26 & n.4) and for the consumer credit markets, even outside of bankruptcy.

With respect to the administration of bankruptcy cases, if the Debtors are correct, bankruptcy courts will need to consider, on a case-by-case basis, the application of any number of different state laws and determine which state's law governs the process for proving and objecting to any particular proof of claim. Will the debtor's residence be determinative, even if the card agreement contains a choice-of-law provision that provides for the application of a different state's law? Will different bankruptcy courts (or, indeed, the same one) need to apply different

8

state procedural rules to resolve objections to different proofs of claim for credit-card debt? These questions and a myriad of others will become relevant if the Debtors are correct that the laws of each of the 50 states can determine the applicable procedures in federal court for proving up and objecting to a proof of claim based on an open-end or revolving consumer credit account.

All of this complication would be directly contrary to undermine Congress' goal of providing "streamlined and summary" procedures for claims allowance in bankruptcy. *See In re Walston*, 606 F. App'x 543, 547 (11th Cir. 2015) (citing *Katchen v. Landy*, 382 U.S. 323, 328-329 (1966)); *see also In re Live Primary, LLC*, 626 B.R. 171, 189 (Bankr. S.D.N.Y. 2021) ("[T]he rules governing claims are intended to simplify the claims allowance process and provide a fair and inexpensive process for all parties."); *In re Shank*, 315 B.R. 799, 814 (Bankr. N.D. Ga. 2004) ("The bankruptcy rules … envision much simpler, expedited proceedings without all the trappings of normal civil litigation. They do not envision the determination of claims based on procedural technicalities such as whether a proof of claim includes adequate documentation."). Applying state procedural rules like those in Nevada would also be contrary to the intent of the drafters of the Bankruptcy Rules who, in 2011, amended Rule 3001 specifically, to limit the information that creditors holding debt based on open-end consumer

9

credit agreements, like credit card agreements, must provide in a proof of claim. *See* Fed. R. Bankr. P. 3001 Committee Notes—2011 Amendment II.

For the multi-billion-dollar industry for credit-card lending and the comparably large market for individuals to obtain consumer credit, this appeal presents equally important issues.[2]  All credit card issuers must anticipate that some number of their borrowers will default and go into bankruptcy.  Card issuers seek to mitigate their resulting losses, in part, by selling defaulted accounts to buyers like LVNV.  If every such buyer is going to need to obtain an authentication by the original issuer of the card agreement, application forms, and account statements for each account it buys in order potentially to recover on those accounts, as the Debtors read Nevada procedure to require, the sale of any such accounts will become more costly and complicated.  That, in turn, will reduce the loss mitigation to issuers that the sales of such accounts can provide and necessarily increase the interest rates and other terms that issuers charge to account holders, making credit more expensive for many, if not all, consumers.

---

[2] By the end of 2022, credit card balances across the nation totaled $986 billion. Federal Reserve Bank of New York, *Center for Microeconomic Data:  Household Debt and Credit Report (Q1 2023)*, https://www.newyorkfed.org/micro economics/hhdc.  In the United States, "[t]he market size, measured by revenue, of the Credit Card Issuing industry was $183.9bn in 2022."  IBISWorld, *Credit Card Issuing in the US – Market Size 2005–2029* (Jan. 27, 2023), https://www.ibis world.com/industry-statistics/market-size/credit-card-issuing-united-states/.

Simply put, LVNV raised precisely the same core issue below as it is now pressing, again, on appeal but, even if were really raising a new issue, this Court could and should consider the issue and issue a decision on the merits.

## II. FEDERAL, NOT STATE, LAW GOVERNS THE DOCUMENTATION A CREDITOR MUST PROVIDE IN SUPPORT OF A PROOF OF CLAIM, AND THE DEBTORS DID NOT PRESENT ANY EVIDENCE, AS THEY WERE REQUIRED TO DO UNDER THE BANKRUPTCY RULES, TO REBUT THE PRIMA FACIE VALIDITY OF LVNV'S PROOF OF CLAIM

The Debtors' merits arguments are similarly unpersuasive. The Debtors do not and cannot dispute the foundational legal principle that while federal courts adjudicating a state-law claim apply the substantive law of the applicable state, they apply federal procedural law. *Erie*, 304 U.S. at 78. The Debtors also do not and cannot dispute that this rule applies fully in bankruptcy. Indeed, an entire set of Federal Rules of Bankruptcy Procedure has been promulgated under the Rules Enabling Act. *See* Fed. R. Bankr. P. 1001-9037; 28 U.S.C. § 2072. Even though "state law" generally "governs the substance of [creditor] claims" in bankruptcy, *Travelers Cas. & Sur. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450 (2007); 11 U.S.C. § 502(b)(1), the Bankruptcy Rules address the process for a creditor to prove up its claim and for the debtor to object to it. *See* Fed. R. Bankr. P. 3001-3007.

In particular, the Bankruptcy Rules provide that a properly executed and filed proof of claim "constitute[s] prima facie evidence of the validity and amount

of the claim." Fed. R. Bankr. P. 3001(f). And those Rules specify the supporting documentation that a creditor with a claim on a credit card account must provide for its proof of claim to be prima facie valid. *Id*. 3001(c).

Critically, the Debtors acknowledge that LVNV provided that documentation and that, accordingly, its claim was prima facie valid. *See* Myers Br. 6 ("The information contained on the face of POC [Proof of Claim] 19 provided each of the items of information required under Rule 3001(c)(3)(A)); Myers Br. 22 ("The Myers did not object to LVNV's proof of claim because it was not entitled to prima facie validity.").

The Debtors nevertheless maintain that the BAP was correct to reverse the Bankruptcy Court's allowance of LVNV's claim. Although they do not organize their brief in this manner, they appear to make two central arguments. First, they contend that the Nevada law requiring different and additional documentation in a collection action in state court is substantive, and "not merely procedural." Myers Br. 25. Second, they contend that, even if the federal bankruptcy rules and not Nevada state law governed the procedures for LVNV to prove up its claim and for the Debtors to object to it, the Debtors did what was required under those rules to rebut the presumption that LVNV's claim was prima facie valid. Neither argument withstands scrutiny.

12

### A.   Bankruptcy Rule 3001, Not Nev. Rev. Stat. § 97A.160, Governs the Procedures for Proving Up and Defending Against a Claim for Credit Card Debt in Federal Bankruptcy Court

The Debtors argue that Nev. Rev. Stat. § 97A.160, the Nevada statute addressing the documentation that a claim buyer has to provide in a state court collection action, is "not merely procedural." Myers Br. 25. The Debtors fail to cite a single case for that proposition, and the entire argument comes down to their assertion that the Nevada rule is important: It "ensures that Nevada's consumers are protected against liability for debt they never incurred charges on or made payments thereon." Myers Br. 25-26.

But the test for whether a legal rule is substantive or procedural—and, in particular, whether a different rule can be adopted under the Rules Enabling Act for litigation in federal court than would apply in state court—is not whether the matter the rule addresses is "important." Every legal rule is considered important (otherwise, the legislature, court, committee or other drafter would not have seen fit to enact or promulgate it), and many procedural rules provide protections that are often critical to plaintiffs and defendants alike.[3] Rather, a rule is procedural if

---

[3] The different rules in federal and state courts for service of process, setting forth the requirements for pleading a particular claim (notice pleading, pleading facts that make the claim plausible, or pleading with particularity), specifying what discovery is permissible and whether discovery may or may not proceed pending

it addresses the "process" for proving up or defending against a claim that substantive law recognizes.

The Supreme Court so held in *Hanna*. There, it considered whether in a diversity case federal law could permit service of process in a manner that Massachusetts law would not have permitted had the case been filed in state court. The Supreme Court recognized that application of the federal rule, rather than the state rule, was "'outcome determinative,'" 380 U.S. at 468, and that, indeed, "'most alterations'" under federal law "'of [state-law] rules of practice and procedure may and often do affect the rights of litigants,'" *id.* at 464-465 (citation omitted). But the Supreme Court nevertheless held that the federal rule controlled because "importance" is not the test. Rather, "'the test must be whether a rule really regulates procedure—the judicial process for enforcing rights and duties recognized by substantive law.'" *Id.* at 464 (citation omitted). The federal rule on service of process "clearly passe[d] muster" under the Rules Enabling Act because it "relate[d] to the 'practice and procedure'" in federal court. *Id.* (citation omitted).

The same analysis applies here. The applicable substantive state law is that card-holders are responsible for charges incurred on their card accounts, and they

---

resolution of a motion to dismiss, providing the standards for summary judgment, and delineating the procedures for any trial provide just a few examples.

are not responsible for charges not incurred on those accounts. *See* Nev. Rev. Stat. § 97A.150 (relating to "[l]iability for charges incurred on [a] credit card account" and stating that "[a] cardholder is personally liable for all charges incurred on his or her credit card account by: (a) The cardholder or an authorized user; and (b) Any other person if the charges result in a beneficial use to the cardholder."). Bankruptcy Rule 3001 addresses the practice and procedure in federal bankruptcy court for an account buyer to prove up its claim under that substantive law and for a debtor to object to it, just as Nev. Rev. Stat. § 97A.160 addresses the practice and procedure in Nevada state court for a claims buyer to prove up its claim in a collection action and for the card holder to defend against the claim.

Indeed, the Debtors describe the Nevada law, not as setting forth the substantive elements of a cause of action for non-payment of debt, but instead as specifying the documentation or evidence required to prove those elements in state court. *See, e.g.*, Myers Br. 12-13 ("[T]he authenticated chain of assignments documents [that LVNV provided showing the assignment of the Debtors' credit card account to it] did not get to the heart [of] NRS 97A.160, which required authenticated evidence of the Myers' written account application or authenticated evidence of the debt that was incurred by the [Debtors.]"). This matters because federal bankruptcy courts routinely apply federal rules of evidence in bankruptcy cases even when considering creditor claims or other disputes that turn on

15

substantive state law. *See, e.g.*, *In re Chu*, 2008 WL 8444805, at *4 (B.A.P. 9th Cir. Mar. 18, 2008) (in ruling on a claim arising under state law, the bankruptcy court correctly applied federal evidentiary rules, despite the parties' arguments based on state evidentiary rules); *In re Barnes*, 266 B.R. 397, 403 (B.A.P. 8th Cir. 2001) ("even when the bankruptcy court applies state law to resolve substantive issues, it must apply the Federal Rules of Evidence to resolve evidentiary questions").

In short, both the federal rule and the state rule at issue in this case concern the procedures for the creditor to prove up its claim and for the debtor to defend against it, not the substantive cause of action for breach of contract for non-payment of validly-incurred debt. *See In re Walston*, 606 F. App'x at 548 (describing the Bankruptcy Rule 3001 and 3003 as "procedural rules"); *In re Davenport*, 544 B.R. 245, 251 (Bankr. D.D.C. 2015) (Rule 3001 is a "rule of *procedure*, not *substance*, and helps to secure the 'just, speedy and inexpensive determination of every case and proceeding'"). And, just as in *Hanna*, the two rules conflict, at least if the Debtors' reading of the Nevada rule is correct: The federal rule lists the documentation that a purchaser of credit card debt must provide with its proof of claim and that list does not include any agreements, account statements or other documents authenticated by the original card issuer; in contrast, the Debtors read the Nevada rule to require such authenticated materials.

16

The two rules thus "answer the same question" differently. *See Martin v. Pierce Cnty.*, 34 F.4th 1125, 1129 (9th Cir. 2022). Under the Rules Enabling Act and *Hanna*, the federal procedural rule controls in federal court.

### B. The Debtors Presented No Evidence To Rebut the Prima Facie Validity of LVNV's Proof of Claim

Perhaps recognizing that Bankruptcy Rule 3001 (and not the Nevada statute) applies, the Debtors devote much of their brief to arguing that LVNV's claim should be disallowed under that Rule. The handful of arguments the Debtors advance are unavailing.

1. The Debtors' principal argument appears to be that, in accordance with Bankruptcy Rule 3001(c)(3)(B), the Debtors requested that LVNV furnish a copy of the underlying card agreement and that LVNV "failed to produce" it. Myers Br. 22. To the contrary, in response to the Debtors' inquiry, LVNV provided the terms and conditions for the Debtors' account, as well as the relevant account statements. ER-138-163. The Debtors complain that the terms and conditions were not "authenticated" by the original issuer of account, Citibank (*see* Myers Br. 18, 20), but that is beside the point. The Bankruptcy Rules require only that the purchaser of the account asserting the claim provide a "copy" of the "writing," not that it furnish any authentication at all, let alone one from the original holder. *See* Fed. R. Bankr. P. 3001(c)(3)(B).

17

In any event, even if LVNV had not provided the writing on which it based its claim, LVNV indisputably filed a claim in accordance with the Bankruptcy Rule and its claim therefore "constituted prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). As the Debtors admit, LVNV also provided all the information required under Rule 3001(c)(3)(A), but even if it had not done so, "[f]ailure to provide the required information does not itself constitute a ground for disallowance of a claim." *Id*. 3001 Committee Notes—2011 Amendment I.

Rather, if a creditor fails to provide that information to the debtor *and* the debtor then presents evidence to rebut the claim's presumption of prima facie validity—something these Debtors never did—the bankruptcy court "may preclude" [the creditor], in response, "from presenting as evidence any of the omitted information, unless the failure to comply with this subdivision was substantially justified or harmless." Rule 3001 Committee Notes—2011 Amendment I; *see also In re Heath*, 331 B.R. 424, 435 (B.A.P. 9th Cir. 2005) ("Noncompliance with Rule 3001(c) is not one of the statutory grounds for disallowance"); *In re Crutchfield*, 492 B.R. 60, 69 n.5 ("the claimants' failure to produce copies of the assignments in response to Debtors' discovery requests has no effect on their claims' prima facie validity"); *In re Campbell*, 336 B.R. 430, 434-435 (B.A.P. 9th Cir. 2005) ("a claim objection that does not actually contest

18

the debtors' liability or the amount of the debt is not enough to disallow a proof of claim, even if the proof of claim lacks the documentation required by Rule 3001(c)").n this case, not only did LVNV provide all the information Rule 3001(c) required, but the Debtors presented no evidence to rebut the prima facie validity of LVNV's claim in any event.

2.    The Debtors make much of the fact that, in the bankruptcy schedules that they filed at the outset of their bankruptcy case, they listed LVNV as the holder of a disputed claim.  Myers Br. 23.  At the time a debtor files for bankruptcy (or shortly thereafter), it is required to file a list of its creditors and a schedule of its assets and liabilities.  11 U.S.C. § 521(a)(1); Fed. R. Bankr. P. 1007.  The main purpose of the list and schedule is to ensure that all creditors obtain timely notice of the bankruptcy filing; indeed, if a creditor is not listed in time for the creditor to file a proof of claim in the bankruptcy case, the debtor may not obtain a discharge of its debt on the claim.  11 U.S.C. § 523(3)(A).  Creditors who are provided notice then file proofs of claim, and the debtor can object to those claims—a process that is entirely independent of the debtor's prior filing of its creditor list and schedule.

Indeed, the Bankruptcy Code provides that a creditor's proof of claim "is deemed allowed" unless the debtor or another party in interest objects.  11 U.S.C. § 502(a).  Scheduling a debt as disputed does not relieve the debtor of the obligation to object to the claim if it believes the claim should be disallowed.  *See*

19

*In re Friedman*, 184 B.R. 883, 887 (Bankr. N.D.N.Y. 1994), *aff'd,* 184 B.R. 890 (N.D.N.Y. 1995) (citing *In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985)); *see also In re Shook*, 278 B.R. 815, 822 (B.A.P. 9th Cir. 2002) ("Merely listing the claim as unsecured in their schedules was not enough to divest the CBIC claim of its status as a deemed valid claim and lien interest.").

Moreover, even if the debtor does file an objection to a claim properly filed under Rule 3001, that objection must do more than simply check a box stating that the claim is disputed; the objection must provide evidence to rebut one more of the elements of the claim, or the claim must be allowed.  Fed. R. Bankr. P. 3001(f); *see also, e.g., In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) (an objection to a proof of claim must "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations … themselves"); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-174 (3d Cir. 1992) ("the objector must produce evidence which, if believed, would refute at least one of the [factual] allegations that is essential to the claim's legal sufficiency").  In short, the mere fact that the Debtors checked the "disputed box" on their bankruptcy creditor list and schedule did not rebut the prima facie validity of LVNV's subsequently-filed proof of claim, and nor did their pro forma objection that included no evidence at all disproving any element of the claim.

20

3.   Grasping for straws, the Debtors contend that Bankruptcy Rule 3001(c)(3) applies only to claims based on "a writing," but that the Rule does not define the term "writing."  According to the Debtors, Nev. Rev. Stat. § 97A.160 fills this supposed gap by limiting such a "writing" to a document authenticated by the original issuer of the credit card account.  Myers Br. 20, 26-27.  The argument fails in numerous ways.  For one, the Bankruptcy Rule *does* specify the "writing" it is referencing—"an open-end or revolving consumer credit agreement."  Fed. R. Bankr. P. 3001(c)(3).  For another, nothing in the Rule purports to require that the agreement be authenticated or incorporate the requirements in the laws of any particular state as to authentication.  To the contrary, when Congress or the Rules Committee uses a common term without giving the term a different meaning, it is presumed that the promulgating body intended the term to have its ordinary meaning in common parlance.  *See, e.g., Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning."); *FDIC v. Meyer*, 510 U.S. 471, 476 (1994) (same).  The ordinary meaning of the noun "writing" is "something written," and the ordinary meaning of "agreement" is a "contract duly executed … and legally binding."  *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary.  Neither term, as ordinarily used, is limited to a document that is authenticated, let alone to a document authenticated by anyone in particular.

21

The Debtors' related argument that Nev. Rev. Stat. § 97A.160 is more specific than Bankruptcy Rule 3001(c)(3), and therefore controls under the canon of construction that a specific statute will control over a general one, is equally misguided. There is nothing "general" about Rule 3001(c)(3). It specifies precisely what information a proof of claim based on a credit card account must include. *See* Fed. R. Bankr. P. 3001(c)(3)(A)(i)-(v). In any event, as the very case the Debtors cite illustrates, the doctrine that a more specific statute will control over a more general one applies to two different provisions enacted by the same legal body, not to two different legal regimes enacted by different governmental bodies, each for application in different courts, like Bankruptcy Rule 3001(c)(3) and Nev. Rev. Stat. § 97A.160. *See In re Jones*, 420 B.R. 506, 514 (B.A.P. 9th Cir. 2009) (reconciling two different provisions of the same statute, the Bankruptcy Code, enacted by the same legislative body, Congress), *aff'd on other grounds*, 657 F.3d 921 (9th Cir. 2011). Rather, the "canon" that controls in a situation like the one presented in this case is the principle the Supreme Court endorsed in *Hanna*: in federal court, a federal rule of procedure duly promulgated under the Rules Enabling Act will govern over a conflicting state rule of procedure even if state substantive law applies.

4. Finally, the Debtors' efforts to distinguish the plethora of case law LVNV has cited are unavailing. According to the Debtors (*see* Myers Br. 25), "[t]he

common thread in these cases can be summed up" in the basic analysis set forth in the Eleventh Circuit's decision in *Walston*: "[A debtor] cannot overcome the prima facie validity of [a creditor's] claims simply by objecting. Instead, he must support his objection with *evidence* to negate a fact set forth in the proof of claim." 606 F. App'x at 548. That is exactly right, and it is exactly why the Debtors' objection to LVNV's claim should have been overruled, as the Bankruptcy Court originally concluded. As the Debtors acknowledge, LVNV submitted its claim in accordance with the Bankruptcy Rules, and it therefore "constituted prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The burden then shifted to the Debtors to present evidence—not a general denial or even legal argument, but evidence—sufficient to rebut a substantive element of the claim. But, like the debtor in *Walston*, the Debtors here "submitted no evidence in support of [their] objection[]" and, accordingly, the objection should have been "overruled." 606 F. App'x at 548.

## III. ALTERNATIVELY, LVNV PROVIDED ALL THE EVIDENCE THAT WOULD HAVE BEEN REQUIRED UNDER NEVADA LAW TO SUPPORT ITS CLAIM IN STATE COURT

Finally, the Debtors do not meaningfully engage with LVNV's alternative argument that the documentation LVNV provided would have sufficed even in a collection action in state court. Nev. Rev. Stat. § 97A.160 specifies that a purchaser of a credit card account "may" prove up its claim in state court through

the authenticated records listed there; it does not say the purchaser "must" proceed that way. As even the Debtors acknowledge, the term "may" is "permissive," not mandatory, Myers Br. 28, a concession that is consistent with the case law construing the provision. *See In re Barnes*, 2022 WL 4073309, at *3 (Bankr. D. Nev. Sept. 2, 2022) ("The use of the word 'may' indicates that the means to prove liability and the amount of debt under NRS 97A.160 are permissive and inclusive rather than mandatory and exclusive.").

The Debtors then do an about-face and argue that reading Section 97A.160 to provide one, but not the only, way for an account buyer to prove up the debt it is owed would improperly imply an exception to an express statute. Myers Br. 28. That is simply wrong. The use of the permissive term "may" is express, not implied, in the statute. And, contrary to the Myers' contention (*id.*), construing Section 97A.160 to mean what it says would not nullify another provision of Nevada law, Nev. Rev. Stat. § 97A.165. All that latter provision says is that, to obtain a judgment, a claims purchaser must "satisfy the standards of proof" set forth in Section 97A.160, which, as noted, permits a claim buyer to prove up its claim through evidence not specifically listed in that section.

## CONCLUSION

For the reasons stated here and in LVNV's Opening Brief, this Court should reverse both the BAP Decision and the Disallowance Order, and remand to the

24

Bankruptcy Court with instructions for it to enter an order allowing LVNV's claim, as the Bankruptcy Court originally did.

May 19, 2023

Respectfully submitted,

*/s/ Philip D. Anker*

PHILIP D. ANKER
ALLYSON PIERCE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
250 Greenwich Street
New York, NY 10007
(212) 230-8800
philip.anker@wilmerhale.com

ISLEY M. GOSTIN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
isley.gostin@wilmerhale.com

EDDIE R. JIMENEZ
ALDRIDGE PITE, LLP
7220 South Cimarron Road
Suite 140
Las Vegas, NV 89113
(858) 750-7600

*Counsel for Appellant LVNV*
*Funding, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-16615, 22-60037

I am the attorney or self-represented party.

**This brief contains** | 5,997 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | | .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Philip D. Anker | **Date** | May 19, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**        *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

| **9th Cir. Case Number(s)** | 22-16615, 22-60037 |
|---|---|

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Reply Brief of Appellant LVNV Funding, LLC

| **Signature** | s/ Philip D. Anker | **Date** | May 19, 2023 |
|---|---|---|---|

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                    *Rev. 12/01/2018*